IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES D. RIDLEY, ) | |
| ) | Chapter 13 Case No. 11-81817-C |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Adversary Case No. 16-08008 |
| ) | |
| M & T BANK, ) | |
| ) | |
| Defendant. ) | |

**<u>DEFENDANT M&T BANK'S POST-TRIAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

Defendant M & T Bank ("M&T Bank") hereby submits its Post-Trial Proposed Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT**

**A.      Nature of the Action.**

1.      This is an adversary proceeding brought by Plaintiff Charles D. Ridley ("Ridley") asserting claims against M&T Bank for: (a) violating the discharge injunction by failing to properly account for and apply Ridley's mortgage payments, pursuant to 11 U.S.C. §§ 105 and 524; (b) punitive damages, pursuant to 11 U.S.C. § 105; (c) relief expenses and attorney's fees, pursuant to Fed. R. Bankr. P. 3002.1(i)(2); (d) violation of the automatic stay by misapplying payments made from property of the bankruptcy estate, pursuant to 11 U.S.C. § 362; (e) contempt for failure to comply with the order confirming the Chapter 13 plan; and (f) demand for accounting.  [*See* Doc. 1.]

2.      Ridley seeks damages for the amount of fees shown on the M&T Bank Mortgage Statements, loss of income, and emotional distress, as well as attorney's fees and costs and punitive damages.  [Doc. 20 at 12-13.]

1

3. For the reasons set forth below, the Court finds and concludes that Ridley has failed to satisfy his burden of proof on any of his claims or prove any damages.

**B. Ridley's Bankruptcy Discharge.**

4. Ridley owns a residence located in Haskell, Oklahoma, subject to a mortgage by M&T Bank. (Tr. at 6:1-4 & Ex. 2.)

5. On November 22, 2011, Ridley filed a Chapter 13 bankruptcy case (the "Bankruptcy"). (Tr. at 6:14-16.)

6. Under the confirmed Chapter 13 plan, M&T Bank's claim was treated pursuant to 11 U.S.C. § 1322(b)(5). (Exs. 6, 16-17.)

7. On October 1, 2014, Bayview Loan Servicing, LLC ("Bayview") filed a Transfer of Claim other than For Security in the Bankruptcy (the "Transfer of Claim"), stating that the claim filed by Ridley's prior mortgage servicer, JPMorgan Chase Bank, NA, had been transferred to Bayview and that payments should be sent to M&T Bank. (Ex. 8.) M&T Bank subsequently filed an Amended Transfer of Claim other than for Security in the Bankruptcy on February 2, 2015. (Ex. 9.)

8. On October 15, 2015, the Chapter 13 Trustee filed a Notice of Final Cure Payment (the "Notice") stating that Ridley should begin making payments directly to M&T Bank in November 2015. (Tr. at 7:13-24 & Ex. 5.)

9. On December 11, 2015, the Court entered an Order of Discharge in Ridley's bankruptcy case (the "Discharge Order"). (Ex. 4.)

10. Ridley was current on his mortgage at the time of the Notice and the Discharge Order. (Tr. at 51:23-52:22.)

11. Ridley filed this adversary proceeding on May 13, 2016. [Doc. 1.]

2

**C.     Ridley's Post-Discharge Payments.**

12.     Beginning in November 2015, Ridley was required to make monthly mortgage payments to M&T Bank in the amount of $692.00.  (Tr. at 12:8-9.)

13.     From October 24, 2015 through February 23, 2016, Ridley mailed monthly mortgage payments to M&T Bank in the amount of $700.00 for his November 2015 through March 2016 mortgage payments..  (Tr. at 8:5-17 & Ex. 21; Tr. at 8:18-9:1 & Ex. 22; Tr. at 9:2-7 & Ex. 23; Tr. at 9:19-25 & Ex. 24; Tr. at 10:7-10:10 & Ex. 25.)

14.     From March 23, 2016 through November 23, 2016, Ridley mailed monthly mortgage payments to M&T Bank in the amount of $692.00 for his April 2016 through December 2016 mortgage payments.  (Tr. at 10:7-10:10 & Ex. 26; Tr. at 10:7-10:10 & Ex. 27; Tr. at 10:7-10:10 & Ex. 28; Tr. at 10:7-10:10 & Ex. 29; Tr. at 10:7-10:10 & Ex. 30; Tr. at 10:7-10:10 & Ex. 31; Tr. at 10:7-10:10 & Ex. 32; Tr. at 10:7-10:10 & Ex. 33; Tr. at 10:7-10:10 & Ex. 34.)

15.     On December 23, 2016, Ridley mailed a check to M&T Bank in the amount of $692.00 for his January 2017 mortgage payment.  (Tr. at 10:7-10:10 & Ex. 35.)   Ridley's January 2017 payment was dishonored.  (Tr. at 27:7-13.)

16.     M&T Bank applied all of Ridley's payments to the principal and interest owed on his mortgage or the escrow.  (Ex. 7, 41-60.)

**D.     Ridley Receives Mortgage Statements from M&T Bank.**

17.     After the Discharge Order, Ridley received mortgage statements from M&T Bank beginning with the Mortgage Statement for the payment due February 1, 2016 (the "February 2016 Statement"). (Tr. at 10:19-11:3 & Ex. 41.)

3

Case 16-08008    Doc 43    Filed 03/03/17    Entered 03/03/17 15:56:38    Desc Main
Document      Page 3 of 20

18. The February 2016 Statement showed that Ridley was credited for the $700.00 payment that M&T Bank received on January 29, 2016 which was applied to the January monthly payment. (Tr. at 12:23-13:14 & Ex. 41.) The February 2016 Statement showed the amount due as $2,261.69 which included "$877.69 in fees outstanding on your M&T mortgage account." (Tr. 12:5-18 & Ex. 41.) The $877.69 included a "Return Item/Other Fee(s)" of $25.00 and a "Recoverable Corporate Advance" of $852.69. (Ex. 41.)

19. The Mortgage Statements from March 1, 2016 through May 1, 2016 showed the amount due as $1,569.69, and which included "$877.69 in fees outstanding on your M&T mortgage account." (Tr. at 13:19-25 & Ex. 42; Tr. at 14:12-16 & Ex. 43; Tr. at 16:8-10 & Ex. 45.)

20. Ridley filed this adversary proceeding on May 13, 2016. [Doc. 1.]

21. All the mortgage statements Ridley received from M&T Bank from June 2016 through January 2017 stated that Ridley was one month behind on payments and listed a "Recoverable Corporate Advance" of varying amounts. (Tr. at 17:2-17:9 & Exs. 46-60.) The September 2016 Statement also showed a Late Charge, and Foreclosure Attorney Fees. (Tr. 18:13-19:19 & Ex. 54.)

22. By letter dated October 3, 2016, M&T Bank notified Ridley that he was in default (the "Default Letter"). (Tr. at 20:14-21:5 & Ex. 19.)

23. The Mortgage Statement from M&T Bank dated October 13, 2016 showed additional foreclosure attorney fees, and a Mortgage Statement from M&T Bank dated October 31, 2016, showed a fee for an insurance inspection. (Tr. at 21:18-22:9, 23:17-24:1 & Exs. 56-57.) Additional foreclosure attorney fees appeared on the Mortgage Statement from M&T Bank dated November 16, 2016. (Tr. at 24:17-25:1 & Ex. 58.)

**E.     Ridley Never Disputes the Fees to M&T Bank.**

24.     Ridley received calls from M&T Bank telling him that he was a month behind in his payments.  (Tr. at 18:1-12.)  But Ridley did not review his records to determine whether M&T Bank's payment records were correct.  (Tr. at 20:6-11.)

25.     Ridley hired his attorney for this adversary proceeding in January 2016 and filed it in May 2016.  (Tr. at 22:17-22.)  Prior to filing suit, Ridley's attorney did not contact M&T Bank or make any demand on M&T Bank.  (Tr. at 22:23-25, 37:6-10.)  Ridley admitted he received a "good amount" of the mortgage statements from M&T Bank while he was represented by counsel and while this adversary proceeding was pending, including all the statements reflecting foreclosure attorney fees, late charges, or the insurance inspection fee.  (Tr. at 28:9-18.)

26.     Ridley claims that he complained about the fees to M&T Bank, but his claim is refuted by M&T Bank's call records.  (Tr. at 30:2-7, 35:19-24, 38:4-8.)  The call records show only that "he was questioning being past due and most conversations ended with him hanging up on our representatives."  (Tr. 35:25-36:6.)

27.     Ridley admitted getting angry and irate during the calls and hanging up on M&T Bank employees.  (Tr. at 30:8-10.)

**F.     Ridley Shows Nominal Evidence of Damages.**

28.     Ridley admitted that M&T Bank did not take any money from him to cover the fees that appeared on the mortgage statements and that he did not pay any fees.  (Tr. at 28:4-8.)

29.     Ridley testified to lost wages of $155.00 for attending the hearing.  (Tr. at 5:22-25.)

5

Case 16-08008    Doc 43    Filed 03/03/17    Entered 03/03/17 15:56:38    Desc Main
Document      Page 5 of 20

30. Ridley stated the Default Letter made him feel like "[M&T Bank] had posted it wrong somewhere" and he thought they lost his payment. (Tr. at 21:6-9). Ridley stated the mortgage statements that he received made him feel that M&T Bank "was adding charges that shouldn't be added" and that "they mis-posted my money somewhere." (Tr. at 21:10-12, 26:5-7.)

31. Ridley stated "he was afraid they was going to take my house," and, with respect to the foreclosure attorneys' fees: "I couldn't understand why they want to foreclose. I was, in my mind, up to date on my payments." (Tr. at 21:13-15, 26:11.) But he also admitted that he was never served a summons for a foreclosure action and that none of the mortgage statements actually threatened foreclosure. (Tr. at 19:9-14, 29:18-20.)

32. The only relief Ridley requested at the hearing was that M&T Bank "fix" his mortgage statement. (Tr. at 26:15-20.)

### G. M&T Bank Already Has Fixed the Inadvertent Billing Error, Which Had No Effect on Ridley's Payments.

33. M&T Bank investigated Ridley's claims that he was not one month behind in payments. (Tr. at 36:3-37:3.) The investigation corroborated that he was one month behind based on M&T Bank's records and Ridley never provided the requested proof of payments to assist M&T Bank with its investigation. (*Id.*) As far as M&T Bank knew, Ridley was delinquent by one month. (Tr. at 41:19-21, 43:14-44:3.)

34. M&T Bank did not know why the February Statement showed a fee for a "Recoverable Corporate Advance." (Tr. at 33:12-24, 40:7-9.) The fees that were shown on the mortgage statements "are not required to be paid until the – technically till the end of the mortgage." (Tr. at 37:11-15.)

6

35. M&T Bank has removed the fees from Ridley's account and he is now deemed current. (Tr. at 37:16-24.) The Foreclosure Attorney Fees were removed after it was discovered that they were mischaracterized litigation fees for this adversary proceeding. (Tr. 59:20-60:17, 62:25-63:8.)

36. The fees shown on the mortgage statements issued by M&T Bank were the result of an apparent inadvertent error by Bayview, which serviced Ridley's loan while he was in bankruptcy. (Tr. at 48:18-49:1.)

37. Bayview audited the loan when it came out of bankruptcy and concluded:

A. That the loan was current and the fees that were on the loan – I can't remember the exact amount – they were to be removed and placed from recoverable to non-recoverable.

Q. And do the records reflect that that request was actually made?

A. Yes, it does.

Q. But it was not actually implemented, is that correct?

A. Correct.

Q. And do you happen to know why?

A. I don't know why, but it was requested that those amounts from the bankruptcy – that was a pending amount from bankruptcy. That was foreclose – for bankruptcy attorney's fees that were not recoverable. So the coordinator, he requested that those fees were to be removed.

…

Q. So Bayview saw the problem, acknowledged it, made the – took steps to correct it, but for reasons we don't know why, it didn't get corrected?

A. Correct.

(Tr. at 58:8-59:2.)

38. From M&T Bank's perspective, since Ridley appeared to have incurred the fees while Bayview was servicing the loan, M&T Bank would not have any knowledge of whether the fees were correct. (Tr. at 45:22-46:3.)

39. As of the date of the hearing, the error "has been corrected," and "any of those fees have been cleared, moved and non-recoverable, Mr. Ridley is deemed current and due for his March 1st payment." (Tr. at 59:3-13.)

## CONCLUSIONS OF LAW

Ridley asserts the following claims against M&T Bank: (a) M&T Bank violated the discharge injunction by failing to properly account for and apply Ridley's mortgage payments, pursuant to 11 U.S.C. §§ 105 and 524; (b) punitive damages, pursuant to 11 U.S.C. § 105; (c) reasonable expenses and attorney's fees, pursuant to Fed. R. Bankr. P. 3002.1(i)(2); (d) violation of the automatic stay by misapplying payments made from property of the bankruptcy estate, pursuant to 11 U.S.C. § 362; (e) contempt for failure to comply with the order confirming the Chapter 13 plan; and (f) demand for accounting. [*See* Doc. 1.] Ridley seeks damages for the amount of fees shown on the M&T Bank Mortgage Statements, loss of income, and emotional distress, as well as attorney's fees and costs and punitive damages. [Doc. 20 at 12-13.]

**A.   M&T Bank is Not Liable for Violating the Discharge Injunction.**

Ridley alleges that M&T Bank's purported failure to properly account for and apply his mortgage payments constitutes a violation of the discharge injunction, pursuant to 11 U.S.C. §§ 105 and 524.

**The Discharge Injunction is Inapplicable to Ridley's Non-Discharged Mortgage.**

"The discharge injunction is limited, however, to debts that are actually discharged." *Perry v. EMC Mortg. Corp. (In re Perry)*, No. 08-3002, 2008 Bankr. LEXIS 1602, at *10

8

(Bankr. E.D. Tenn. May 2, 2008) (citing 11 U.S.C. §§ 1322(b)(5), 1328(a)(1)). The plan treated M&T Bank's mortgage claim pursuant to 11 U.S.C. § 1322(b)(5). (Ex. 6, 16-17.) As a result, M&T Bank's claim was excepted from discharge under 11 U.S.C. § 1328(a)(1).

Since Ridley's mortgage with M&T Bank was not discharged in the Bankruptcy, the discharge injunction imposed by § 524 does not apply. *In re Perry*, 2008 Bankr. LEXIS 1602, at *11. The ruling in *In re Perry* is particularly instructive because the debtor in this case, like Ridley, asserted the mortgagee failed to "accurately account for plan payments made by the Chapter 13 Trustee during the case and for post-discharge payments." *Id.* at *10.

Therefore, M&T Bank has not violated any section of the bankruptcy code and cannot be held in contempt under § 105. *Id.* at *12 (dismissing Chapter 13 debtor's claim against mortgagee for violation of discharge injunction); *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 421 B.R. 356, 364-366 (Bankr. S.D. Tex. 2009) (granting summary judgment to mortgagee on Chapter 13 debtor's claim for discharge injunction after finding "that no statutory basis exists for discharging home mortgage debt"); *Telfair v. First Union Mortg. Corp. (In re Telfair)*, 224 B.R. 243, 248-49 (Bankr. S.D. Ga. 1998) (denying class certification because Chapter 13 debtor's discharge injunction violation claim does not survive summary judgment). *See also Navarro v. Banco Popular de P.R. (In re Navarro)*, No. 15-00235, 2017 Bankr. LEXIS 52, at *38-39 (Bankr. D.P.R. Jan. 9, 2017) (granting summary judgment to creditor on Chapter 7 debtor's discharge injunction violation claim where debt was not discharged).

However, even if the discharge injunction applies in this instance, Ridley has failed to prove that M&T Bank violated the discharge injunction or that he incurred any damages as a result of a violation.

**Ridley's Burden of Proof for a Violation of the Discharge Injunction**

Assuming the discharge injunction of § 524 applies to a non-discharged home mortgage debt, the Court has the equitable power to enforce and remedy violations of the discharge injunction in § 524(a)(2). *Paul v. Inglehart (In re Paul)*, 534 F.3d 1303, 1306 (10th Cir. 2008) (reversing finding of discharge injunction violation). But "a bankruptcy court may sanction a party for violating the discharge injunction only if the party *took some action prohibited by § 524(a)(2)* – i.e., an action 'to collect, recover or offset any discharged debt … of the debtor." *Id.* (quoting 11 U.S.C. § 524(a)(2). "A violation of § 524(a)(2) may still be found if the debtor proves the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly, i.e., so as to obtain payment of the discharged debt." *Id.* (quotation omitted). "The inquiry is objective; the question is whether the creditor's conduct had the practical, concrete effect of coercing payment of a discharged debt, and bad faith is not required." *Id.* at 1308.

"By the same token, the presence of some other procedural impropriety or error in connection with the creditor's action will not give rise to a violation of the discharge injunction if the objective effect is not to coerce payment of a discharged debt. . . . *If an act is not in fact one to collect or enforce a prepetition debt, then whatever its faults, it is not a violation of the discharge, even though undertaken by the holder of a discharged debt.*" *Id.*

Ridley has the burden of proving by clear and convincing evidence that M&T Bank's actions were willful, in that M&T Bank (1) had actual or constructive knowledge of the discharged debt and (2) intended the actions which were taken in violation of the injunction. *Peyrano v. Sotelo (In re Peyrano)*, 558 B.R. 451, 457 (Bankr. E.D. Okla. 2016).

**Ridley Fails to Satisfy His Burden of Proof of a Discharge Injunction Violation.**

The Court finds that M&T Bank is not liable for violating the discharge injunction under § 524(a)(2) and, therefore, is not subject to sanctions for contempt under § 105(a).

First, Ridley's mortgage with M&T Bank was not discharged in the Bankruptcy. As a result, M&T Bank cannot have taken action "to collect, recover or offset any discharged debt … of the debtor." *In re Paul*, 534 F.3d at 1306 (quoting 11 U.S.C. § 524(a)(2)).

Moreover, while M&T Bank had actual or constructive knowledge of the Discharge Order, Ridley has failed to prove that M&T Bank intended any actions that purportedly violated the injunction. *In re Jester v. Wells Fargo, N.A. (In re Jester)*, EO-15-002, 2015 Bankr. LEXIS 3627, at *22-23 (10th Cir. BAP Oct. 22, 2015) (finding that misapplication of postpetition payments did not violate discharge injunction). *Contra In re Peyrano*, 558 B.R. at 459 (creditor "intentionally had the summons issued, secured the process server, and caused [debtor] to be served with the summons the intent that service would prompt Peyrano to pay the discharged debt").

Ridley admitted that M&T Bank did not take any money from him to cover the fees that appeared on the mortgage statements and that he did not pay any fees. (Tr. at 28:4-8.) Ridley's testimony is corroborated by the mortgage statements, which show that payments M&T Bank received were applied to principal and interest. (Exs. 41-60.) There is no evidence in the record that M&T Bank failed to properly account for and apply his mortgage payments.

Mortgage statements sent by M&T Bank beginning with the February 2016 Statement suggested that Ridley was one month behind on his mortgage payments and listed various fees, but the statements were consistent with M&T Bank's records. (Tr. at 36:3-37:3, 41:19-21, 43:14-44:3.) M&T Bank investigated Ridley's claims that he was not one month behind in

11

payments. (Tr. at 36:3-37:3.) The investigation corroborated that he was one month behind based on M&T Bank's records and Ridley never provided the requested proof of payments to assist M&T Bank with its investigation. (*Id.*)

Ridley did not complain about the various fees shown on the mortgage statements during call with M&T Bank. (Tr. at 35:19-24, 38:4-8.) The call records show only that "he was questioning being past due and most conversations ended with him hanging up on our representatives." (Tr. 35:25-36:6.) The delinquency and fees shown on the mortgage statements issued by M&T Bank were the result of an apparent inadvertent error by Bayview, which serviced Ridley's loan while he was in bankruptcy. (Tr. at 48:18-49:1, 58:8-59:2.)

Since Ridley appeared to have incurred the fees while Bayview was servicing the loan, M&T Bank would not have any knowledge of whether the fees were correct. (Tr. at 45:22-46:3.) M&T Bank could not have intended to send Ridley erroneous mortgage statements where it lacked knowledge that the statements were incorrect and sent statements consistent with its records. In any event, M&T Bank has removed the fees from Ridley's account and he is now deemed current. (Tr. at 37:16-24, 59:3-13, 59:20-60:17, 62:25-63:8.)

**Ridley Has Not Proven Any Actual Damages.**

Even if the Court found a violation of the discharge injunction, Ridley's actual damages are limited to lost income of $155.00 for attending the hearing. (Tr. at 5:22-25.) Ridley admitted that M&T Bank did not take any money from him to cover the fees that appeared on the mortgage statements and that he did not pay any fees. (Tr. at 28:4-8.)

Ridley also seeks damages for emotional distress. Ridley "bear[s] the burden of proving actual damages with reasonable certainty" and "[f]leeting and unsubstantiated emotional distress is not compensable." *In re Gagliardi*, 290 B.R. 808, 819 (Bankr. D. Colo. 2003); *In re Peyrano*,

558 B.R. at 460. *See also In re Trujillo*, 485 B.R. 238, 254 (Bankr. D. Colo 2012). Ridley did not offer any medical evidence of emotional distress. *In re Gagliardi*, 290 B.R. at 819. At most, Ridley experienced confusion from the mortgage statements and Default Letter. (Tr. at 21:6-9, 21:10-12, 26:5-7.) Ridley's statement that "he was afraid they was going to take my house" is not credible because Ridley was never served with process in a foreclosure action, none of the mortgage statements actually threatened foreclosure, and Ridley was represented by an attorney at the time he received statements that included foreclosure attorneys' fees. (Tr. at 19:9-14, 21:13-15, 26:11, 29:18-20.) Accordingly, Ridley has failed to prove any emotional damages.

Lastly, Ridley is not entitled to lost income of $155.00 for attending the hearing in this adversary proceeding because the entire proceeding could have been avoided if Ridley's counsel had simply contacted M&T Bank before filing suit. *See Mitchell v. Anderson (In re Mitchell)*, 545 B.R. 209, 220 (Bankr. N.D. Ohio 2016) (debtor's "duty to mitigate reflects the sound judicial policy that profit-making from violations of either the automatic stay or discharge injunction is inherently improper).

Accordingly, Ridley has failed to prove he is entitled to any actual damages.

**Ridley is Not Entitled to An Award of Attorneys' Fees.**

Ridley also seeks attorneys' fees and submitted evidence at the hearing that Ridley's counsel had charged him $21,470.00 in legal fees up to the date of the hearing in this adversary proceeding. (Ex. 62.) The Court reserved the issue of the reasonableness of the attorneys' fees until after it determines whether Ridley is the prevailing party in this proceeding. (Tr. at 4:15-20.)

Ridley is not entitled to this relief because he is not the prevailing party, but even if M&T Bank violated the discharge injunction, Ridley is not entitled to attorneys' fees for the additional

13

reason that he has failed to show any actual damages. It is apparent that Ridley and his counsel are attempting to use the discharge injunction "as a sword for their enrichment." *McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 169 (9th Cir. BAP 1995) (refusing to award attorneys' fees for technical violation of automatic stay). *See Mitchell v. Anderson (In re Mitchell)*, 545 B.R. at 220 (debtor's "duty to mitigate reflects the sound judicial policy that profit-making from violations of either the automatic stay or discharge injunction is inherently improper).

As the Court suggested during the hearing, this entire adversary proceeding could have been avoided if Ridley's counsel had made an effort to contact M&T Bank prior to filing suit. (Tr. at 22:23-25, 37:6-10.) *See, e.g.*, *Lienhard v. Lehighton Ambulance Ass'n, Inc.* 498 B.R. 443, 452 (Bankr. M.D. Pa. 2013) (refusing to award damages for automatic stay violation because "the Plaintiff, or her counsel, could have easily sent a cease-and-desist letter, by regular or certified mail, to the Defendant after receipt of Bill 1 or Bill 2 to prevent further distress and prevent litigation. Hand delivery of a cease-and-desist letter could also have been easily accomplished. None of these action were taken here."); *Duling v. First Fed. Bank (In re Duling)*, 360 B.R. 643, 647 (Bankr. N.D. Ohio 2006) (Yet, whether it is the automatic stay of § 362(a) or the discharge injunction of § 524(a), it is inherently improper for a debtor or their attorney to view violation thereof as a profit-making endeavor."). As a result, an award of attorneys' fees is not appropriate.

**B.      M&T Bank is Not Liable for Punitive Damages.**

Ridley asserts the conduct of M&T Bank that purportedly violated the discharge injunction also warrants punitive damages. Ridley is not entitled to punitive damages because M&T Bank is not liable for violating the discharge injunction.

14

Nor are punitive damages warranted under these circumstances. The Tenth Circuit Bankruptcy Appeals Panel has recognized two standards for awarding punitive damages. First, a "debtor may recover punitive damages when the defendant acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so." *Diviney v. NationsBank, N.A. (In re Diviney)*, 225 B.R. 762, 776 (10th Cir. BAP 1998). The second standard involves a review of the following four factors: (1) the nature of the defendant's conduct; (2) the defendant's ability to pay; (3) the motives of the defendant; and (4) any provocation by the debtor. *Id.* at 777. In *In re Peyrano*, 558 B.R. at 460, the Court declined to award punitive damages despite finding that the creditor "intentionally had the summons issued, secured the process server, and caused [debtor] to be served with the summons the intent that service would prompt Peyrano to pay the discharged debt."

M&T Bank's conduct does not rise anywhere near the level of the creditor in *In re Peyrano*, and Ridley fails to satisfy his burden of proof under either standard. There is no evidence in the record that M&T Bank failed to properly account for and apply his mortgage payments. (Tr. at 28:4-8 & Exs. 41-60.) Regardless of the fees listed on the mortgage statements, all payments were credited to principal and interest or the escrow. (Exs. 7, 41-60.) The record does show that M&T Bank issued mortgage statements reflecting that Ridley was one month behind in his payments and that his account had incurred various fees, but that was due to an inadvertent error. (Tr. at 48:18-49:1, 58:8-59:2.)

M&T Bank performed an investigation into Ridley's purported delinquency and confirmed its records matched the statements. (Tr. at 36:3-37:3.) Ridley never provided the requested proof of payments to assist M&T Bank with its investigation. (*Id.*) Ridley never

15

complained to M&T Bank about the fees shown on the statements, many of which appeared after the commencement of this adversary proceeding. (Tr. at 35:19-24, 38:4-8, 35:25-36:6.)

Further, Ridley's counsel never made contacted or made a demand on M&T Bank about his client's claims. (Tr. at 22:23-25, 37:6-10.) Had he done so, this entire proceeding could have been avoided. As a result, punitive damages are not warranted on this record.

**C.     M&T Bank is Not Liable for Reasonable Expenses and Attorneys' Fees.**

Ridley asserts that M&T Bank failed to notify him of fees, expenses and charges as required by Fed. R. Bankr. P. 3002.1(c), and, as a result, M&T Bank is precluded from presenting the omitted information and Ridley is entitled to appropriate relief, including reasonable expenses and attorney's fees caused by the failure, pursuant to Fed. R. Bankr. P. 3002.1(i)

Rule 3002.1(c) is inapplicable because M&T Bank does not assert that any pre-discharge fees are recoverable against the debtor or against the debtor's principal address. Indeed, M&T Bank has removed all the disputed fees from Ridley's account.

Further, Ridley is not entitled to attorneys' fees pursuant to Rule 3002.1(i) because, at most, M&T Bank committed a technical violation that was harmless. Ridley admitted that M&T Bank did not take any money from him to cover the fees that appeared on the mortgage statements and that he did not pay any fees and there is no evidence in the record that M&T Bank failed to properly account for and apply his mortgage payments. (Tr. at 28:4-8 & Exs. 41-60.)

Ridley has not incurred any actual damages and his attorneys' fees could have been avoided had his counsel made contacted or made a demand on M&T Bank about his client's claims. (Tr. at 22:23-25, 37:6-10.)

**D.     M&T Bank is Not Liable for Violating the Automatic Stay.**

Ridley asserts that M&T Bank violated the automatic stay by misapplying payments from the bankruptcy estate and that he is entitled to actual and punitive damages. The automatic stay imposed by 11 U.S.C. § 362 continues until the earliest of the time the case is close, the time the case is dismissed, or, in a Chapter 13 case, the time a discharge is granted. 11 U.S.C. § 362(c)(2).

On December 11, 2015, the Court entered the Discharge Order, thereby terminating the automatic stay. Ridley did not present any evidence that his mortgage payments were misapplied prior to December 11, 2015. As a result, the record does not contain any evidence of a violation of the automatic stay during the pendency of the stay. The evidence presented at the hearing was limited to the period after the Discharge Order was entered, but any actions by M&T Bank after that date, "as a matter of law could not constitute a violation of the automatic stay" because the automatic stay had terminated. *See Santander Consumer, USA, INc. v. Houlik (In re Houlik)*, 481 B.R. 661, 669-70 (10th Cir. BAP 2012) (repossession of truck after termination of automatic stay did not violate stay); *In re Calloway*, No. 15-13980-JDL, 2016 Bankr. LEXIS 534, at *13-14 (Bankr. W.D. Okla. Feb. 19, 2016) (creditor could prosecute foreclosure action after dismissal of the bankruptcy case terminated the automatic stay).

Ridley has failed to prove that M&T Bank violated the automatic stay and he is not entitled to actual or punitive damages for this claim.

**E.     Ridley Has Not Proven that M&T Bank Failed to Comply with the Order Confirming the Chapter 13 Plan**.

Ridley asserts that M&T Bank should be held in contempt for violating the terms of the confirmed Chapter 13 plan. The record does not contain any evidence that M&T Bank misapplied any payments during the Bankruptcy or otherwise violated the plan. *See Ogden v.*

*PNC Bank, N.A. (In re Ogden)*, 532 B.R. 329, 332-34 (Bankr. D. Colo. 2014) (postpetition fees shown in mortgagee's accounting records, but not paid by debtor, did not violate the Chapter 13 plan); *Guevara v. Wells Fargo Bank, N.A. (In re Guevara)*, No. 08-03191, 2010 Bankr. LEXIS 3687, at *7 (Bankr. N.D. Tex. Oct. 12, 2010) ("The mere posting of a charge or sending a default notice, without more, is not an act to obtain possession."). As a result, Ridley's claim fails.

**F.     Ridley's Demand for Accounting Has Been Resolved.**

The only relief Ridley requested at the hearing was that M&T Bank "fix" his mortgage statement. (Tr. at 26:15-20.) M&T Bank has removed the fees from Ridley's account and he is now deemed current. (Tr. at 37:16-24, 59:20-60:17, 62:25-63:8.) As such, Ridley's demand for accounting has been resolved.

### CONCLUSION

Based on the foregoing findings of fact and conclusions of law, it is hereby ORDER AND ADJUDGED that:

(1)     M&T Bank is not liable to Ridley;

(2)     The Court denies all relief sought by Ridley and dismisses the Complaint with prejudice;

(3)     All costs of this action are taxed against Ridley; and

(4)     The Clerk is DIRECTED to enter judgment accordingly.

[SIGNATURE APPEARS ON THE FOLLOWING PAGE.]

Respectfully submitted,

/s/ Matthew J. Hudspeth
Matthew J. Hudspeth, OBA No. 14613
BAER & TIMBERLAKE, P.C.
4200 Perimeter Center, Suite 100
Oklahoma City, OK 73102
Telephone: (405) 842-7722
Fax: (918) 794-2768
mhudspeth@baer-timberlake.com
Attorney for Defendant, M & T Bank

## **CERTIFICATE OF SERVICE**

       This is to certify that I did, on this 3rd day of March, 2017, electronically transmit the above and foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

    Greggory T. Colpitts, Esq.
    THE COLPITTS LAW FIRM
    Tulsa, OK 74136-1079
    Telephone: (918) 747-9747
    Email: greg@colpittslawfirm.us
    Attorney for Plaintiff

                                                  /s/ Matthew J. Hudspeth
                                                  Matthew J. Hudspeth – OBA No. 14613