# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF OKLAHOMA

In Re:                                        }
Ridley, Charles D.                            }
    SSN: xxx-xx-6136                   }     Case No.: 11-81817-C
                                  }     Chapter 13
                Debtor                  }
CHARLES D. RIDLEY,                            }     Adv. Case No.: 16-8008-TRC
                Plaintiff               }
v.                                            }
                                              }
M & T BANK,                                   }
                Defendant.              }

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Plaintiff's proposed Findings of Fact and Conclusions of Law are as follows:

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 105 and 524. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## FINDINGS OF FACT

### A.    Stipulated Facts

The following facts were stipulated in the Pre-Trial Order and required no evidence:

1.    On July 15, 2002, Charles Ridley (hereinafter "Mr. Ridley" or "the Plaintiff") executed a promissory note and mortgage in the amount of $85,000.00 at a fixed interest rate of 6.375% in favor of Beacon Financial Group, an Oklahoma Corporation (the "Note and Mortgage" or individually the "Note" and "Mortgage").

2.    The Note is currently serviced by M & T Bank or M & T Bank is the current holder of the Note (hereinafter "M & T Bank" or "the Defendant").

3.    On November 22, 2011, the Plaintiff filed his Chapter 13 Bankruptcy Petition and Schedules with the Court. The Plaintiff completed the Chapter 13 Plan and received his Discharge

on December 11, 2015.

4.     On October 15, 2015, the Chapter 13 Trustee filed his Notice of Final Cure Payment and provided notice to M & T Bank that the Trustee's records indicated that the payments under the confirmed Chapter 13 Plan were sufficient to cure all delinquencies, and the loan should be contractually due for November 2015, as of the final Trustee payment.

5.     On November 5, 2015, M & T Bank filed its Statement in Response to Notice of Final Cure Payment (the "Statement in Response") wherein M & T Bank stated it agrees that Mr. Ridley was current with regard to all pre- and post-petition default payments.  The Statement in Response states that $0.00 is due for both pre- and post-petition default payments.

6.      Pursuant to the Chapter 13 Trustee's Notice of Final Cure Payment and M & T Bank's Statement in Response, Mr. Ridley was, as of October 2015, current on the Note as though no default had ever occurred.

7.     Pursuant to the Chapter 13 Trustee's Notice of Final Cure Payment, Mr. Ridley was responsible for making payments to M & T Bank beginning with the month of November 2015.

8.     M & T Bank or its predecessor did not file a Notice of Post-Petition Fees, Charges or Expenses during the pendency of the Plaintiff's bankruptcy.

9.     Following the completion of his Chapter 13 Bankruptcy case, Mr. Ridley was contractually due for November 2015.

10.     Following completion of his Chapter 13 Bankruptcy case, Mr. Ridley made each of the post-completion payments from November 2015 to December 2016.

        a.     November 2015 Payment - On October 24, 2015, the Plaintiff mailed check number 206 in the amount of $700.00, which was received by M & T Bank on November 2, 2015.

b.      December 2015 Payment - On November 24, 2015, the Plaintiff mailed check number 209 in the amount of $700.00, which was received by M & T Bank on December 1, 2015.

c.      January 2016 Payment - On December 23, 2015, the Plaintiff mailed check number 213 in the amount of $700.00, which was received by M & T Bank on December 30, 2015.

d.      February 2016 Payment - On January 25, 2016, the Plaintiff mailed check number 219 in the amount of $700.00, which was received by M & T Bank on January 29, 2016.

e.      March 2016 Payment - On February 23, 2016, the Plaintiff mailed check number 222 in the amount of $700.00, which was received by M & T Bank on February 29, 2016.

f.      April 2016 Payment - On March 23, 2016, the Plaintiff mailed check number 226 in the amount of $692.00, which was received by M & T Bank on March 28, 2016.

g.      May 2016 Payment - On April 20, 2016, the Plaintiff mailed check number 231 in the amount of $692.00, which was received by M & T Bank on April 28, 2016.

h.      June 2016 Payment - On May 23, 2016, the Plaintiff mailed check number 234 in the amount of $692.00, which was received by M & T Bank on May 25, 2016.

i.      July 2016 Payment - On June 23, 2016, the Plaintiff mailed check number 244 in the amount of $692.00, which was received by M & T Bank on June 27, 2016.

j.      August 2016 Payment - On July 23, 2016, the Plaintiff mailed check number 249 in the amount of $692.00, which was received by M & T Bank on August 1, 2016. See Exhibit 30.

k.      September 2016 Payment - On August 23, 2016, the Plaintiff mailed check number 254 in the amount of $692.00, which was received by M & T Bank on August 30, 2016.

l.      October 2016 Payment - On September 23, 2016, the Plaintiff mailed check number 258 in the amount of $692.00, which was received by M & T Bank on October 3, 2016.  See Exhibit 32.

m.      November 2016 Payment - On October 23, 2016, the Plaintiff mailed check number 261 in the amount of $692.00, which was received by M & T Bank on October 29, 2016.

n.      December 2016 Payment - On November 23, 2016, the Plaintiff mailed check number 267 in the amount of $692.00, which was received by M & T Bank on November 29, 2016.

11.    M & T Bank has attempted and continues to attempt to collect from Mr. Ridley Fees, Charges and Expenses that were not disclosed in the course of the Plaintiff's Chapter 13 Bankruptcy as required by F.R.Bankr.P. 3002.1.

12.    Despite receiving payments sufficient to pay the pre-petition arrearage, the post-petition Mortgage Fee, and the regular monthly mortgage loan payments, M & T Bank has,

4

following the completion of Mr. Ridley's Chapter 13 bankruptcy, continued to show Mr. Ridley delinquent on his mortgage loan.

13. Mr. Ridley has incurred attorney's fees and costs associated with this action.

**B.    Admitted Facts**

The following facts were admitted by M & T Bank in the Defendant's Responses to Plaintiff's First Request for Admissions:

14. Upon completion of the Plaintiff's Chapter 13 Plan, the Plaintiff was current on his mortgage loan as though no default ever occurred.

15. Upon completion of the Plaintiff's Chapter 13 Plan, payments had been made from the Chapter 13 Trustee to the Defendant sufficient in amount to pay the pre-bankruptcy mortgage arrearage as shown in the proof of claim filed by the Defendant.

16. Upon completion of the Plaintiff's Chapter 13 Plan, payments had been made from the Chapter 13 Trustee sufficient to pay the amount set forth in the Notice of Post-Petition Mortgage Fee, Expenses, and Charges filed by M & T Bank.

17. Despite receiving payments sufficient to pay the pre-petition arrearage, the post-petition Mortgage Fee, and the regular monthly mortgage loan payments, [M & T Bank has], following the completion of the Plaintiff's Chapter 13 bankruptcy, continued to show the Plaintiff delinquent on his mortgage loan.

**C.    Facts Proven at Trial**

The Trial Transcript is attached hereto as Exhibit B.  The following facts were proven at trial:

18. The Notice of Final Cure Payment informed Mr. Ridley that he was contractually due for November 2015.  See Exhibit 5.  Trial Transcript at p. 7, lns. 13-24.

19.     During the direct examination, Mr. Ridley testified that he mails his mortgage payments early each and every month.

> Plaintiff's Counsel: Now, I notice that you've been mailing these ahead of time early. Is that correct?
>
> Plaintiff: Correct.
>
> Plaintiff's Counsel: How do you—do you have some means of scheduling those or knowing when to send them in?
>
> Plaintiff: Yes. I have it marked on my calendar the first full week before it's due.
>
> Plaintiff's Counsel: Okay. And you do that every month?
>
> Plaintiff: Yes, sir.
>
> Plaintiff's Counsel: Every year?
>
> Plaintiff: Every year.

Trial Transcript at p. 9, lns. 8-18.

20.     Mr. Ridley further testified that he places the check in the mail the date he wrote the check.

> Plaintiff's Counsel: And will you turn to Exhibit Number 24? Can you identify that document for us?
>
> Plaintiff: Yes.
>
> Plaintiff's Counsel: What is that?
>
> Plaintiff: That is a copy of my check for the February payment.
>
> Plaintiff's Counsel: And when did you mail that payment?
>
> Plaintiff: 1/24 of '15.
>
> Plaintiff's Counsel: So you would place these checks in the mail the date that you dated them?
>
> Plaintiff: Yes, sir.
>
> Plaintiff's Counsel: Would you put them in the mail at your house or would you—

6

what would you do?

Plaintiff: I took it—at the Post Office.

Plaintiff's Counsel: So, in fact, if we were to go through Exhibits 21 through 35, they would all reflect the same thing, correct, that you made every monthly payment—

Plaintiff: Yes, sir.

Plaintiff's Counsel: —approximately one week in advance?

Plaintiff: Right.

Transcript at p. 9, lns. 19-25; p. 10, lns. 1-12.

21.     The M &T Mortgage Statement dated February 1, 2016, was the first mortgage statement that Mr. Ridley received, despite having completed his Chapter 13 Bankruptcy months prior. See Exhibit 41. Trial Transcript at p. 10, lns. 13-25; p.11, lns. 1-7.

22.     Mr. Ridley called the Defendant to request "a detailed statement of [his] account since they took over the bankruptcy." Trial Transcript at p. 11, lns. 6-7.

23.     The February statement that Mr. Ridley received showed him delinquent one month, as well as the fact that M & T Bank was assessing him for corporate advances. See Exhibit 40.

24.     Despite Mr. Ridley being current on his post-bankruptcy mortgage payments, the Defendant has continued to show him delinquent each month following the bankruptcy. In fact, all statements, from February 2016 to February 2017, show that Mr. Ridley was one month behind on his mortgage and that there is recoverable corporate advances of varying amounts. Trial Transcript at p. 11-17. See Exhibits 42-60.

25.      From February 2016 to January 2017, the amount due shown on the mortgage statements increased from $1,569.69 to $4,815.83. See Exhibits 42-60.

26.     The amount due stated on the mortgage statements were inconsistent, as each

month's amount due varied from month to month. Some months increased, whereas other months decreased. Trial Transcript at p. 24, lns. 5-15.

27.     Mr. Ridley received calls from the Defendant about every other week, informing him that he was a month behind—despite the fact that he had made every monthly payment post-petition. Trial Transcript at p. 18, lns. 1-12.

28.     As evidenced by each continuing monthly mortgage statement and Mr. Ridley's conversations with the M & T Bank representatives, M & T Bank refused to fix Mr. Ridley's statements to show him current.

29.     Mr. Ridley became extremely frustrated with M & T Bank's continued refusal to fix the problem M & T Bank had created.

30.     In September 2016, Mr. Ridley received not only a late charge of $31.38, but also three foreclosure attorney fees totaling $875.00. See Exhibit 54. Trial Transcript at p. 18, lns. 13-19; p. 19, lns. 1-19.

31.     As of the date of the trial, the Plaintiff had never been served a summons and a foreclosure was never filed. Trial Transcript at 19, lns. 9-14.

32.     In October 2016, the Plaintiff received a letter from the Defendant stating, "You are in default under the terms of your mortgage loan." Mr. Ridley was utterly confused and believed M & T Bank had made a mistake. See Exhibit 19. Trial Transcript at p. 20, lns. 13-25; p. 21, lns. 1-17.

33.     The Defendant has had notice of this delinquency problem from Mr. Ridley's phone conversations with M & T employees and from the filing of this adversary in May 2016, yet has continued charging foreclosure fees and late fees even up to the date of trial.

34.     Receiving the mortgage statements caused the Plaintiff great stress and concern that

the Defendant was going to take his house. Trial Transcript at p. 26, lns. 4-14.

35.     The Defendant's representative, Jeremy Kirsh (hereinafter the "M & T Bank Representative"), is a mortgage outreach manager involved in collection efforts. Trial Transcript at p. 31.

36.     Despite its involvement in this litigation since May 2016, the Defendant has refused to seriously consider the problems with the Plaintiff's mortgage account. The M & T Bank representative at trial had limited knowledge of the Plaintiff's mortgage account and had only been given two days to review the account. In short, the Defendant came to trial admitting that the Plaintiff's mortgage loan account was in fact current, but had little explanation as to why the M & T Bank records showed the Plaintiff's account one month delinquent with varying charges assessed against the account.

37.     The M & T Bank Representative received and reviewed the Plaintiff's loan file a mere two days prior to trial and was "somewhat" familiar with it.

Plaintiff's Counsel: Are you familiar with Mr. Ridley's M&T Bank loan file?

M & T Bank Representative: Somewhat, yes.

Plaintiff's Counsel: Somewhat. Okay. Define "somewhat."

M & T Bank Representative: I was asked to review it the day before yesterday and that was the first time that I had seen the account, so I was able to review some of the notes and some of the information on it.

Plaintiff's Counsel: So you've not been actively involved in Mr. Ridley's loan file?

M & T Bank Representative: No, I have not. Not personally.

Trial Transcript at p. 32, lns. 1-9.

38.     The M & T Bank Representative's department handles mortgage loans that become delinquent.

Plaintiff's Counsel: Are you involved with mortgage loan files after they come out

9

of Chapter 13 Bankruptcy?

M & T Bank Representative: If they move into collections. If they move—I'm sorry—if they move past due.

Plaintiff's Counsel: I'm sorry. Say again.

M & T Bank Representative: If they end up being delinquent.

Trial Transcript at p. 32, lns. 10-15.

39.     The M & T Bank Representative was not familiar with M & T Bank's procedures regarding mortgage loans that move out of a Chapter 13 Bankruptcy.  Trial Transcript at p. 32, lns. 16-24.

40.     M & T Bank listed Mr. Ridley's loan as delinquent, and it was transferred to the M & T Bank Representative's department.

Plaintiff's Counsel: Okay. Was Mr. Ridley's loan file in your department?

M & T Bank Representative: Yes.

Plaintiff's Counsel: And why was it in your department?

M & T Bank Representative: Because the account was showing delinquent.

Plaintiff's Counsel: And why was it showing delinquent?

M & T Bank Representative: My—from what I reviewed on the account, it appeared that the account was running one month past due.

Trial Transcript at p. 32, lns. 25; p. 33, lns. 1-6.

41.     The M & T Bank Representative did not possess any knowledge as to why Mr. Ridley's mortgage loan account, a mere three to four months following the bankruptcy, showed fees and charges due.  Trial Transcript at p. 33, lns. 11-24; p. 34, lns. 3-7.

42.     The fees were assessed prior to being transferred to the M & T Bank Representative's department.  Trial Transcript at p. 39, lns. 1-4.

43.     The Representative's department received the Plaintiff's loan account "[s]ometime

in early 2016 or late 2015" because the records reflected it was supposedly delinquent. Trial Transcript at p. 39, lns. 5-6.

44.     Despite the Defendant's stipulations before trial that the Plaintiff was current from the end of bankruptcy up to the date of trial, the M & T Bank Representative adamantly refused to acknowledge that Mr. Ridley was indeed current, that there was a mistake on the Defendant's part, or that there was an explanation for how the error occurred.

> Plaintiff's Counsel: Okay. So since M & T Bank has already stipulated that he was current and is current as of today, since the bankruptcy was completed why were these mortgage statements showing him delinquent one month?
>
> M & T Bank Representative: Again, we showed in our record system that he was showing a month past due.
>
> Plaintiff's Counsel: So if M & T Bank's mortgage statements were accurate why would they be showing that?
>
> M & T Bank Representative: That a monthly payment was missed.
>
> Plaintiff's Counsel: By M & T Bank?
>
> M & T Bank Representative: No, that it was not received.
>
> Plaintiff's Counsel: But M & T Bank has stipulated for purposes of this trial—and, in fact, he was because that's why they stipulated to it—they stipulated that he was current in his statement—in his payments.
>
> M & T Bank Representative: I don't understand.
>
> Plaintiff's Counsel: That was—I'm going back to my basic question is, why are these statements showing him delinquent when, in fact, he was not?
>
> M & T Bank Representative: We show that he was delinquent.
>
> Plaintiff's Counsel: Okay. Do you acknowledge that he was not delinquent?
>
> M & T Bank Representative: At what point in time?
>
> Plaintiff's Counsel: Since November 2015.
>
> M & T Bank Representative: Again, showing for two—since January of 2016, I

show that he was delinquent.

Trial Transcript at p. 42, lns. 8-25, p. 43, lns. 1-7.

45.    The M & T Bank Representative's testimony directly contradicts the testimony of the Defendant's other witness, as well as the Exhibits admitted at trial.

46.    Bayview Loan Servicing (hereinafter "Bayview") handles M & T Bank's loans when the loans are in foreclosure or in bankruptcy. Trial Transcript at p. 48, lns. 18-20.

47.    Samantha Thomas, a litigation manager of default administration at Bayview, testified on behalf of Bayview. Bayview serviced Mr. Ridley's loan when it was in bankruptcy. Trial Transcript at p. 48, lns. 4-7, 24-25; p. 49, lns. 1-5.

48.    The Bayview Representative acknowledged the Notice of Final Cure and that M & T Bank or Bayview agreed Mr. Ridley was current. See Exhibit 5.

> Plaintiff's Counsel: So again, M&T Bank and Bayview are saying that Mr. Ridley is current on his mortgage loan as though no default ever occurred and his first mort—post-Chapter 13 mortgage payment is due November 1, 2015.
>
> Bayview Representative: Correct.
>
> Plaintiff's Counsel: You agree with that?
>
> Bayview Representative: Yes.

Trial Transcript at p. 52, lns. 16-22.

49.    Both M & T Bank and Bayview have access to the same data. Trial Transcript at p. 53, lns. 3-7.

50.    The transactional or activity statement covers a period of February 14, 2014 to December 31, 2015. M & T Bank and Bayview would both have access to it. See Exhibit 7. Trial Transcript at p. 53, lns. 8-13.

51.    The M & T Bank Representative alleged that a payment was not received from Mr. Ridley, therefore leading to the transfer of Mr. Ridley's loan to the collections department in late

2015 or early 2016. Trial Transcript at p. 42, lns. 8-15; p. 43, lns. 1-7.

52.     However, the activity statement shows receipt of three payments post-petition: November 2, 2015 for $700; December 1, 2015 for $700; and December 30, 2015 for $700. See Exhibit 7. Trial Transcript at p. 53, lns. 23-25; p. 54, lns. 1-25; p. 55, lns. 1-2.

53.     The three payments represented the Plaintiffs checks dated October 24, 2015; November 24, 2015. See Exhibits 7 and 21-23. Trial Transcript at p. 53-55.

54.     The three checks fulfill the Plaintiff's payment obligations for November 2015, December 2015, and January 2016.

> Plaintiff's Counsel: Okay. So Mr. Ridley testified that he sent in his first payment he sent in and in October was for the November payment. That was the first one he was due for, which M&T Bank, Bayview, shows receipt of. Then there's the next payment which is December and then the third one on the first page is January, right?
>
> Bayview Representative: Correct.
>
> Plaintiff's Counsel: So as of January 2016 had—based upon this activity report—had Bayview, M&T Bank received three mortgage payments for Mr. Ridley?
>
> Bayview Representative: Yes, but the January is not stated here.
>
> Plaintiff's Counsel: Right. It stops at December, but we know that he sent in three payments, right?
>
> Bayview Representative: Correct.
>
> Plaintiff's Counsel: And his first payment under the Notice of Final Cure was for November 2015. So if he sent in three payments that's November, right? December and January. Do you agree?
>
> Bayview Representative: Um-hum.

Trial Transcript at p. 55, lns. 10-20.

55.     The Defendant's admissions before trial, the activity statement, and the testimony of the M & T Bank Representative are contradictory. The M & T Bank Representative refused to acknowledge not only that the Plaintiff's mortgage loan account was truly current, but also that

despite the activity statement showing receipt of the November, December, and January payments, the Defendant's records falsely showed the Plaintiff was delinquent and transferred the loan to collections.

> Plaintiff's Counsel: So January 2016 [the loan] came into your department and M&T Bank shows Mr. Ridley's account delinquent?
>
> M & T Bank Representative: Correct.
>
> Plaintiff's Counsel: And you're not willing to acknowledge that that is wrong?
>
> M & T Bank Representative: Unfortunately, according to our system of record, that is correct.
>
> Plaintiff's Counsel: So regardless of the fact that Mr. Ridley is, in fact, current in January of 2016, even as we sit here today after nine months of litigation, and you, the representative for M&T Bank, is refusing to acknowledge that he was current for every month following November 2015?
>
> M & T Bank Representative: According to our system of record, correct, he was delinquent.
>
> . . .
>
> Plaintiff's Counsel: And when was the last month that M&T Bank's records show him delinquent? They showed him delinquent in January 2017, didn't they?
>
> M & T Bank Representative: Correct.
>
> Plaintiff's Counsel: They showed him delinquent in his February statement, didn't they?
>
> M & T Bank Representative: That I'm not sure of. Review that February statement.
>
> Plaintiff's Counsel: So as of three weeks ago your records still showed him delinquent, to your knowledge?
>
> M & T Bank Representative: Correct. Yes.

Trial Transcript at p. 43, lns. 14-25; p. 44, lns. 1, 7-16.

56.     The M & T Representative's testimony shows that although the Defendant admits it is wrong, it has put forth no effort to rectify the error and remove the loan from the collections

department.

57.     However, the Bayview Representative acknowledged that according to the activity statement, the Plaintiff was current in January 2016 because he timely submitted his payments and M & T records show receipt.  Thus, it is not possible for him to be delinquent.

> Plaintiff's Counsel: You agree that Mr. Ridley since completion of his Chapter 13 bankruptcy as of December had sent in 2015 three payments.
>
> Bayview Representative: Correct.
>
> Plaintiff's Counsel: Which would cover November, December, and January.
>
> Bayview Representative: That is correct.
>
> Plaintiff's Counsel: And if he was current as though no default ever occurred following the Chapter 13 bankruptcy and his first payment was due in November, how could he be delinquent? He couldn't, could he?
>
> Bayview Representative: That is correct.

Trial Transcript at p. 57, lns. 10-20.

58.     Not only did M & T Bank show Mr. Ridley as delinquent, but it also began assessing bogus fees.  The monthly mortgage statements from M & T Bank for the months of September, October, November, and December, 2016, show that M & T Bank began charging the Plaintiff foreclosure attorney's fees.  See Exhibits 54-59.

59.     The Defendant's testimony at trial was that the charges were mischaracterized and were actually attorney's fees for the current litigation.   Such testimony was self-serving and incredible.  The facts are that it is just as likely that the Defendant was preparing to foreclose upon the Plaintiff's home.  Trial Transcript at p. 59, lns. 20-25; p. 60, lns. 1-17.

60.     The facts admitted by the Defendant before and during trial show a banking institution that is fully aware of the problems with Mr. Ridley's mortgage loan account, but has continually refused to fix Mr. Ridley's mortgage loan account.

61.     The actions of the Defendant have caused material injury to the Plaintiff.

62.     Where a defendant is fully aware of the errors and refuses to correct them, it can only be concluded that the failure to correct the issues is a willful and malicious act.

63.     According to information available on the internet, M & T Bank is a large bank with assets in excess of $122 billion.  M & T Bank has the assets and the resources to devote time and money to fix the Plaintiff's mortgage loan account.

## CONCLUSIONS OF LAW

The civil contempt powers of § 105(a) grants bankruptcy courts the power to sanction a creditor and to remedy violations of the discharge injunction.  *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1306-07 (10th Cir. 2008); *see also In re Skinner*, 917 F.2d 444 (10th Cir. 1990).

### A.     Violation of the Automatic Stay

Immediately following the conclusion of the Plaintiff's Chapter 13 bankruptcy, the Defendant's records showed the Plaintiff delinquent on his mortgage loan.  The Defendant did this despite having agreed in the Notice of Final Cure that the Plaintiff was current as though no default had ever occurred following completion of the Chapter 13 bankruptcy.  This can only happen if the Defendant had misapplied payments during the Chapter 13 bankruptcy.

The payments to M & T Bank under the Chapter 13 Plan were made from the Plaintiff's wages.  Pursuant to 11 U.S.C. § 1306, a debtor's earnings following the commencement of the case are property of the bankruptcy estate.  The automatic stay under 11 U.S.C. § 362(a)(3) prohibits a creditor from taking any act to "obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

The Defendant violated the automatic stay of § 362 when it failed to properly apply payments received from the Chapter 13 Trustee.  As evidenced by the facts stipulated, admitted,

Case 16-08008    Doc 44    Filed 03/03/17    Entered 03/03/17 16:05:19    Desc Main
Document    Page 16 of 26

and proven at trial, the Plaintiff was current on his mortgage loan as though no default had ever occurred. The Plaintiff was current immediately following conclusion of his Chapter 13 Bankruptcy and up to the date of trial. However, as established during trial, the Defendant showed the Plaintiff was one month delinquent on his mortgage payments instantly after his bankruptcy concluded. The only possible conclusion is that the Defendant misapplied payments during the bankruptcy—payments that were made from property of the Plaintiff's bankruptcy estate. By doing so, the Defendant violated the automatic stay by taking possession of property of the estate or of property from the estate or to exercise control over property of the estate. The Defendant has even failed to account for the missing payment or payments.

### B. Violation of the Discharge Injunction

In a Chapter 13 bankruptcy case, 11 U.S.C. § 1328(b)-(c) discharges a debtor from "from all unsecured debts provided for by the plan or disallowed under section 502," except as provided for in § 524. Section 524(a)(2) provides that a discharge:

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

Section 524(a) is immediately triggered upon the entry of an order of discharge. The section "prevents any act intended to cause a debtor to repay a discharged debt, including legal proceedings, letters, phone calls, threats of criminal proceedings or similar actions." *Peyrano v. Sotelo (In re Peyrano)*, No. 15-8011-TRC at *8-9 (Bankr. E.D. Okla. 2016). This post-discharge injunction serves to protect debtors from being pursued to pay discharged debts; therefore, the section enjoins creditor actions to collect personally from a debtor. *Walker v. Wilde (In re Walker)*, 927 F.2d 1138, 1141-42 (10th Cir. 1991).

The Plaintiff's mortgage loan is a debt described under 11 U.S.C. § 1322(b)(5) and therefore excepted from the discharge by 11 U.S.C. § 1328(a)(1). However, the Defendant's

conduct constitutes a violation of 11 U.S.C. § 524(i) and thus, a violation of 11 U.S.C. § 524(a)(2). Section 524(i) provides that

> [t]he willful failure of a creditor to credit payments received under a plan confirmed under this title . . . shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

The Defendant failed to properly credit payments required by the Plaintiff's Confirmed Chapter 13 Plan. The Plaintiff completed all 60 payments of his Chapter 13 Plan; however, the Defendant did not apply the payments correctly. Immediately following the completion of the Plaintiff's bankruptcy, the Defendant's records incorrectly showed the Plaintiff was delinquent on his loan. In fact, the Defendant has admittedly said, countless times, that the Plaintiff was delinquent from the end of the bankruptcy up until the date of the trial.

The Defendant's actions constitute a "willful failure" under § 524(i). No specific intent is required in order for a creditor's actions to be deemed "willful"; the creditor must merely have "intended the actions that constituted the violation[.]" *In re Johnson*, 501 F.3d 1163, 1171-72 (10th Cir. 2007). In the case at bar, the Defendant was indeed willful—it intended to take the acts that it took that violate the discharge injunction. By admission of the parties, the Defendant's records showed the Plaintiff as being delinquent. The Defendant showed—and continues to show—the Plaintiff as delinquent for a significant amount of time—at least a year and three months. It willfully sent months and months of inaccurate statements with no attempt to work with the Plaintiff to determine why the statements were inaccurate or to fix the problem. Moreover, the Defendant requested the Plaintiff to send proof of payment when he questioned being allegedly past due. Why did Mr. Ridley bear this burden? Is it now his responsibility to do the bank's job to keep track of customers' payments? The Defendant is a sophisticated bank and should have these payments on record and easily accessible in Mr. Ridley's file. The proof that Mr. Ridley

would have provided would have been exactly what they had in their system. Essentially, this request would have gotten nowhere because the Defendant has refused time and again to accept the truth.

Additionally, the Defendant's misapplication of payments is a willful violation because it did not properly credit the payments received under the Chapter 13 Plan. This willful failure to properly apply the payments has caused the Plaintiff material injury. The Plaintiff received more than a year's worth of monthly mortgage statements that continuously state he was delinquent on his payments. If the continued erroneous assertions of delinquencies and the continued refusal to rectify the errors do not constitute material injury, then what would?

Furthermore, the statements included various other charges and costs. The continued actions of the Defendant have caused the Plaintiff immense stress, confusion, and fear that his home was going to be taken in foreclosure. The fear of a foreclosure was real for the Plaintiff when the Defendant began charging the Plaintiff for foreclosure attorney's fees in September, October, November, and December 2016. How is the Plaintiff to conclude otherwise? The Plaintiff must take at face value the statements his lender sends to him. How is it up to him to determine what these fees are and if the Defendant truly intends to collect them or not?

### C. Damages for Violations of the Automatic Stay and the Discharge Injunction

Section 362(k)(1) provides that

an individual injured by *any* willful violation of a stay provided by this section *shall* recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, *may* recover punitive damages.

(emphasis added). In order to impose sanctions against the Defendant for its violations of the automatic stay and the discharge injunction, the Court must first find that the Defendant's actions were "willful" as a preliminary matter. *In re McCarthy*, 421 B.R. 550, 567 (Bankr. Colo. 2009); *In re Gagliardi*, 290 B.R. 808, 818-19 (Bankr. Colo. 2003); *In re Diviney*, 211 B.R. 951,

19

966 (Bankr. N.D.Okla. 1997). A willful violation does not require evidence of specific intent. A violation is willful if the party knew of the automatic stay or the discharge injunction and intended to take the violating actions. *In re Gagliardi*, 290 B.R. at 818. Even a violation committed without knowledge of the stay becomes willful "if the creditor fails to remedy the violation after receiving notice of the stay." *Id.* at 818-19.

The debtor must establish, "by a preponderance of the evidence that the creditor knew of the automatic stay and intended the actions that constituted the violation[.]" *In re Johnson*, 501 F.3d 1163, 1172 (10th Cir. 2007). Once a court determines a violation to be willful, the imposition of sanctions and the award for damages becomes mandatory. *See In re Gagliardi*, 290 B.R. 808, 818-19 (Bankr. Colo. 2003); *In re Johnson*, 501 F.3d 1163, 1170-71 (10th Cir. 2007).

It is plainly obvious that the Defendant acted willfully. The Defendant had clear notice of the bankruptcy, as well as of the discharge. The Plaintiff is entitled to damages for the Defendant's egregious violations of the automatic stay and the discharge injunction. Each and every statement that the Plaintiff received from the Defendant is a separate and continuing violation of the automatic stay and the discharge injunction. The Defendant knowingly and willfully continued to send the Plaintiff false statements alleging he was delinquent on his loan, as well as assessing extra fees, costs, and charges.

As stated above, the Defendant stipulated that the Plaintiff completed his bankruptcy and was deemed current on his loan as though no default had ever occurred. Thus, each month from the end of the bankruptcy to the date of the trial, the Defendant knowingly and willingly provided the Plaintiff with inaccurate mortgage statements alleging delinquency. Not only that, but the Defendant continually assessed various extra fees, costs, and charges against the Plaintiff. These charges were extremely inconsistent—the amounts changed month to month, increasing and

decreasing without rhyme or reason.  These "amounts due" varied greatly each month, from as low as $1,569.69 to as high as $4,815.83.  The Defendant put the burden on the Plaintiff to guess whether or not the Defendant intended to collect these various charges or foreclose on his home, which of course, was unknowable from the Plaintiff's perspective.

Moreover, the Defendant time and again refused to correct the Plaintiff's mortgage statements.

As a result, each monthly statement is an independent violation of the automatic stay and the discharge injunction.  Because it is a continuing violation, the Plaintiff's damages are the sum of all the statements.

| | Description | Amount |
|---|---|---|
| | **Actual Damages:** | |
| 1 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – February 2016 | $1,569.69 |
| 2 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – March 2016 | $877.69 |
| 3 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – April 1, 2016 | $877.69 |
| 4 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – April 18, 2016 | $1,569.69 |
| 5 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – April 28, 2016 | $877.69 |
| 6 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – May 16, 2016 | $1,569.69 |
| 7 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – May 25, 2016 | $877.69 |
| 8 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – June 16, 2016 | $1,569.69 |
| 9 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – June 27, 2016 | $877.69 |
| 10 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – July 18, 2016 | $1,569.69 |
| 11 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – August 16, 2016 | $1,569.69 |
| 12 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – August 30, 2016 | $877.69 |
| 13 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – September 16, 2016 | $2,476.07 |

| 14 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – October 3, 2016 | $2,476.07 |
| 15 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – October 17, 2016 | $3,329.95 |
| 16 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – October 31, 2016 | $2,612.95 |
| 17 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – November 16, 2016 | $4,123.83 |
| 18 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – December 16, 2016 | $1,445.21 |
| 19 | Unapplied payments, Returned Item/Other Fees, and Recoverable Corporate Advances – January 17, 2017 | $2,183.57 |

**Damages for Violation of the Automatic Stay and Discharge Injunction:** **$33,331.93**

### D. Attorney's Fees and Costs.

Pursuant to 11 U.S.C. §§ 105 and 362(k), the Plaintiff is entitled to his attorney's fees and costs for the Defendant's violation of the discharge injunction and the automatic stay. The Plaintiff was forced to undertake this litigation to stop the actions of the Defendant. Pursuant to the Plaintiff's revised Exhibit 62 attached hereto, the Plaintiff's attorney's fees and costs are $40,450.00 and $644.02, respectively. The Plaintiff is entitled to the award of his attorney's fees and costs against the Defendant.

### E. Punitive Damages

Section 362(k)(1) allows for the award of punitive damages "in appropriate circumstances." Punitive damages may be awarded when the creditor "acted with actual knowledge that it was violating a federally protected right or with reckless disregard of whether it was doing so." *In re Stellato*, No. 12-01207-HRT at *8 (Bankr. Colo. 2014). *See also In re Diviney*, 225 B.R. 762, 776-77 (B.A.P. 10th Cir. 1998); *In re Gagliardi*, 290 B.R. at 820; *In re McCarthy*, 421 B.R. at 568. The primary purposes of a punitive damages award are punishment and deterrence. *In re Stellato* at *8. A court must consider five factors when determining whether

to award punitive damages: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the level of sophistication of the creditor; (4) the creditor's motives; and (5) any provocation by the debtor. *In re Stellato* at *8. *See also In re Gagliardi*, 290 B.R. at 820; *In re McCarthy*, 421 B.R. at 568; *In re Diviney*, 225 B.R. at 777.

### 1.     The Nature of Creditor's Conduct

Since the completion of the Plaintiff's Chapter 13 bankruptcy, the Defendant has refused to correct the Plaintiff's mortgage account despite repeated requests by the Plaintiff and this litigation. The Defendant continuously sent the Plaintiff false mortgage statements month after month after month—an obvious willful action. Such conduct is both willful and malicious and compels the award of punitive damages. Furthermore, the Defendant not only received notice of the bankruptcy, but also agreed in the Notice of Final Cure that the Plaintiff was current on his mortgage as though no default had occurred. Thus, the Defendant had actual knowledge of the automatic stay and of the discharge injunction.

The Defendant's own witness refused to acknowledge at trial that the M & T Bank mortgage loan records for the Plaintiff were inaccurate despite the Defendant's own admissions and stipulations to the contrary prior to trial. This also merits the award of punitive damages.

However, what is more compelling is the Defendant's false statements at trial. The Defendant and its counsel stated at trial that the Plaintiff's mortgage loan account had been corrected. See Trial Transcript at p. 37, lns. 22-24; p. 58, lns. 2-25; p. 59, lns. 1-16. The Trial took place on February 16, 2017. At the same time that the Defendant and its counsel were making a representation before this Court, the Defendant was issuing a mortgage statement asserting the opposite. The M & T Bank Mortgage Statement dated February 16, 2017, and attached hereto as Exhibit A, shows that M & T Bank continues to assert the Plaintiff is delinquent one month, has

been charged a late fee of $31.38, and that the Plaintiff has been charged numerous fees and charges including Foreclosure Attorney Costs, a Foreclosure Attorney Fee, and a Bankruptcy Attorney Fee.

Conduct weighs heavier than words and M & T Bank's conduct proves that it will not correct the Plaintiff's mortgage loan account unless it is motivated to do so. The only motivation that this Court can apply is financial motivation. Financial motivation in the form of punitive damages is well warranted.

### 2.    The Creditor's Ability to Pay

M & T Bank is a bank with assets in excess of $122 billion and had the financial and human resources to rectify the Plaintiff's account long ago, but it has willfully and maliciously refused to do so. This Court should award punitive damages in such an amount to motivate the Defendant to rectify its conduct. There is little doubt that the Defendant has the ability to pay the damages the Plaintiff urges the Court to assess.

### 3.    The Level of Sophistication of the Creditor

M & T Bank is a multi-billion dollar bank. As a bank, its very purpose is to deal with money, mortgages, and lending. It only follows that a bank by its very nature must deal with delinquency, foreclosure, and bankruptcy issues. As evidenced at trial, there is indeed a component service that handles loans in foreclosure or bankruptcy. As such, the Defendant is a sophisticated bank that regularly makes consumer loans, and given the nature of its business, it should be highly familiar with bankruptcy and how to properly handle loans coming out of bankruptcy. On a more simplistic level, the Defendant should be able to properly apply payments and correct its own mistakes.

### 4.    The Creditor's Motives

24

The Defendant's actions do not reflect a desire to exact revenge on the Plaintiff or some other ill will against him. However, M & T Bank's conduct were in direct contradiction with the purpose of Chapter 13 bankruptcies. Bankruptcy provides debtors with a fresh start, and for those trying to save their homes through a Chapter 13—the chance to once again be current on their mortgage as though no default had ever occurred.

The Plaintiff was not allowed that fresh start. Immediately following bankruptcy and being declared current as though default had occurred, the Plaintiff began received statements alleging he was delinquent one month and owed a slew of other fees and charges. Mr. Ridley's "fresh start" was anything but—it could more accurately be described as a nightmare. The Defendant clearly put its economic objectives ahead of the Plaintiff's rights under the Bankruptcy Code.

### 5. Provocation by the Debtor

The Defendant will likely argue that the Plaintiff did not do enough to contact M & T Bank to resolve the issue. However, the Plaintiff did indeed speak to multiple representative at M & T Bank—but that got him nowhere. In short, there has been no provocation by the Plaintiff.

The Plaintiff urges the Court to find that the relevant factors weigh in favor of awarding punitive damages. The Plaintiff's actual damages are in excess of $33,331.93 and the Plaintiff has incurred attorney's fees and costs of $644.02 for total actual damages of $30,450.00. This Court should award punitive damages of 5 times the Plaintiff's actual damages or $322,129.75.

*/s/ Greggory T. Colpitts*

Greggory T. Colpitts, OBA No.: 14381

**The Colpitts Law Firm**

6506 South Lewis, Suite 175

Tulsa, OK  74136-1079

918-747-9747

greg@colpittslawfirm.us

Attorney for Plaintiff

March 3, 2017

Date