**Dated: May 31, 2017**

**The following is ORDERED:**



_____
TOM R. CORNISH
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:
CHARLES D. RIDLEY,                                    CASE NO. 11-81817-TRC
                                                      CHAPTER 13
,
                        Debtor.

CHARLES D. RIDLEY,
                        Plaintiff

v.                                                    CASE NO.  16-8008-TRC

M & T BANK,
                        Defendant.

<u>MEMORANDUM OPINION</u>

     Plaintiff Charles D. Ridley seeks an order from this Court finding that Defendant M & T

Bank violated the automatic stay and discharge injunction.  After conducting a trial in this matter,

the Court finds that Defendant M & T Bank did violate the discharge injunction and should

therefore be found in contempt of court.  The Court also awards damages including lost wages,

punitive damages and attorney fees to Ridley.

**Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G) and (O).

**Post Trial Motion to Strike**

After trial, M & T Bank filed a Motion to Strike Statements and Exhibit from Ridley's Proposed Findings of Fact and Conclusions of Law. M & T Bank objects to an exhibit attached to Ridley's Proposed Findings and Conclusions which it states was not admitted at trial and should therefore not be considered by this Court. The Court agrees and therefore grants the Motion to Strike Exhibit A. As for the specific paragraphs M & T Bank seeks to strike on the grounds that they are misleading, inflammatory and hearsay, the Court declines to grant that relief. The Court accepts the offer of both parties regarding their views of the evidence submitted. The Court is capable of evaluating the proposed findings and conclusions and rendering its decision on the merits.

**Findings of Fact**

**A.   Stipulated Facts**

The Court adopts the following facts pursuant to the parties' stipulation in the Pre-Trial Order:

1.     On July 15, 2002, the Plaintiff executed a promissory note and mortgage in the amount of $85,000.00 at a fixed interest rate of 6.375% in favor of Beacon Financial Group, an Oklahoma Corporation (the "Note and Mortgage" or individually the "Note" and "Mortgage").

2.     The Note is currently serviced by M & T Bank or M & T Bank is the current holder of the Note.

3. On November 22, 2011, the Plaintiff filed his Chapter 13 Bankruptcy Petition and Schedules with the Court. The Plaintiff completed the Chapter 13 Plan and received his Discharge on December 11, 2015.

4. On October 15, 2015, the Chapter 13 Trustee filed his Notice of Final Cure Payment and provided notice to M & T Bank that the Trustee's records indicated that the payments under the confirmed Chapter 13 Plan were sufficient to cure all delinquencies, and the loan should be contractually due for November 2015, as of the final Trustee payment.

5. On November 5, 2015, M & T Bank filed its Statement in Response to Notice of Final Cure Payment (the "Statement in Response") wherein M & T bank stated it agrees that the Debtor was current with regard to all pre- and post-petition default payments. The Statement in Response states that $0.00 is due for both pre- and post-petition default payments.

6. Pursuant to the Chapter 13 Trustee's Notice of Final Cure Payment and M & T Bank's Statement in Response, the Plaintiff was, as of October 2015, current on the Note as though no default had ever occurred.

7. Pursuant to the Chapter 13 Trustee's Notice of Final Cure Payment, the Plaintiff was responsible for making payments to M & T Bank beginning with the month of November 2015.

8. M & T bank or its predecessor did not file a Notice of Post-Petition Fees, Charges or Expenses during the pendency of the Plaintiff's bankruptcy.

9. Following completion of his Chapter 13 Bankruptcy case, the Plaintiff was contractually due for November 2015.

10.    Following completion of his Chapter 13 Bankruptcy case, the Plaintiff made each of the

post-completion payments from November 2015 to December 2016.

a.    November 2015 Payment – On October 24, 2015, the Plaintiff mailed check

number 206 in the amount of $700.00, which was received by M & T Bank on November

2, 2015.

b.    December 2015 Payment – On November 24, 2015, the Plaintiff mailed check

number 209 in the amount of $700.00, which was received by M & T Bank on December

1, 2015.

c.    January 2016 Payment – On December 23, 2015, the Plaintiff mailed check

number 213 in the amount of $700.00, which was received by M & T Bank on December

30, 2015.

d.    February 2016 Payment – On January 25, 2016, the Plaintiff mailed check

number 219 in the amount of $700.00, which was received by M & T Bank on January

29, 2016.

e.    March 2016 Payment – On February 23, 2016, the Plaintiff mailed check number

222 in the amount of $700.00, which was received by M & T Bank on February 29, 2016.

f.    April 2016 Payment – On March 23, 2016, the Plaintiff mailed check number 226

in the amount of $692.00, which was received by M & T Bank on March 28, 2016.

g.    May 2016 Payment – On April 20, 2016, the Plaintiff mailed check number 231

in the amount of $692.00, which was received by M & T Bank on April 28, 2016.

h.    June 2016 Payment – On May 23, 2016, the Plaintiff mailed check number 234 in

the amount of $692.00, which was received by M & T Bank on May 25, 2016.

i.       July 2016 Payment – On June 23, 2016, the Plaintiff mailed check number 244 in the amount of $692.00, which was received by M & T Bank on June 27, 2016.

j.       August 2016 Payment – On July 23, 2016, the Plaintiff mailed check number 249 in the amount of $692.00, which was received by M & T Bank on X.[1]

k.       September 2016 Payment – On August 23, 2016, the Plaintiff mailed check number 254 in the amount of $692.00, which was received by M & T Bank on August 30, 2016.

l.       October 2016 Payment – On September 23, 2016, the Plaintiff mailed check number 258 in the amount of $692.00, which was received by M & T Bank on X.

m.       November 2016 Payment – On October 23, 2016, the Plaintiff mailed check number 261 in the amount of $692.00, which was received by M & T Bank on October 29, 2016.

n.       December 2016 Payment – On November 23, 2016, the Plaintiff mailed check number 267 in the amount of $692.00, which was received by M & T Bank on November 29, 2016.

11.     M & T Bank has attempted and continues to attempt to collect from the Plaintiff Fees, Charges and Expenses that were not disclosed in the course of the Plaintiff's Chapter 13 Bankruptcy as required by F.R. Bankr. P. 3002.1.

12.     Despite receiving payments sufficient to pay the pre-petition arrearage, the post-petition Mortgage Fee, and the regular monthly mortgage loan payments, M & T Bank has,

---

[1] Presumably, designation of "X" is because parties were unable to determine date M & T Bank received Plaintiff's monthly payment.

following the completion of the Plaintiff's Chapter 13 bankruptcy, continued to show the Plaintiff delinquent on his mortgage loan.

13.    The Plaintiff has incurred attorney's fees and costs associated with this action.

**B.    Additional Findings of Fact**

In addition to the stipulated facts, the Court makes the following findings of fact:

14.    Ridley was current on his mortgage at the time of the Notice of Final Cure Payment dated October 15, 2015, and on the date of this Court's Discharge Order on December 11, 2015. M & T Bank admitted this at trial and in its Proposed Findings of Fact and Conclusions of Law.

15.    To ensure his mortgage payments were paid on a timely basis, Ridley had a regular practice of marking the date to mail the payment on his calendar the first full week before the payment was due, and mailing the payment on that date by depositing it in the mail at the post office.

16.    Twenty Mortgage Statements were sent to Ridley from February 1, 2016 through January 17, 2017. Ridley's mortgage statements reflected varying amounts due, from $ 1,569.69 to $ 4,815.83.

17.    The first post-discharge mortgage statement sent by M & T Bank to Ridley was dated February 1, 2016. It reflected that Ridley owed $ 2,261.69, which included his regular monthly payment of $ 692.00, a delinquent payment of $ 692.00, and "$ 877.69 in fees outstanding on your M&T account." These fees were identified as a "Return Item/Other Fee(s)" of $ 25.00 and a "Recoverable Corporate Advance" of $ 852.69.

18.    All Mortgage Statements dating from February 1, 2016 through August 30, 2016 reflected an amount due of either $ 1,569.69 or $ 2,261.69, and included additional

charges designated as a "Return Item/Other Fee(s)" of $ 25.00 and a "Recoverable Corporate Advance" of $ 852.69.

19. Beginning in September of 2016, the additional charges increased. Ridley was billed for late charges of at least $ 31.38, and as high as $ 125.52. "Recoverable Corporate Advance" charges increased from $ 852.69 to $ 1,727.69, and were as high as $ 3,337.69.

20. Also beginning with the September statement, M & T Bank began adding charges identified as Foreclosure Attorney Fees. Usually these included several separate charges each month, with total Foreclosure Attorney Fees charged each month ranging from $ 787.50 to $ 875.00.

21. On October 3, 2016, M & T Bank sent a letter to Ridley notifying him that his mortgage loan was in default. It advised him to contact its "Homeowner Assistance Center Team" to consider a repayment plan, loan modification, short sale, or deed in lieu of foreclosure.

22. The October 31, 2016 Mortgage Statement included additional Foreclosure Attorney Fees, and an Insurance Inspection Fee.

23. The last statement Ridley received before trial was dated January 17, 2017. It listed the total amount due as $ 2,839.09, and included a Recoverable Corporate Advance charge of $ 1,450.19.

24. Ridley received calls from M & T Bank every other week reporting that he was one month delinquent in his payments.

25. Ridley believed that M & T Bank was planning to foreclose on his home.

26. Ridley never received a summons or notice that a foreclosure lawsuit had been filed against him.

27. Ridley incurred lost wages of $155 per day to appear and prosecute his case against M & T Bank.

28. At trial, two witnesses testified on behalf of M & T Bank: Jeremy Kirsh, Mortgage Outreach Manager for M & T Bank, and Samantha Thomas, litigation manager of default administration for Bayview Loan Servicing Company ("Bayview"). Bayview provided foreclosure and bankruptcy services to M & T Bank.

29. M & T Bank and Bayview have access to the same mortgage account data through shared servicing platforms.

30. Ridley's loan had been assigned to Kirsh's department because it was considered to be delinquent.

31. Kirsh was "somewhat" familiar with Ridley's account. Just two days prior to trial, Kirsh was assigned to review Ridley's file in order to testify before this Court. Until that day, Kirsh had not been personally involved in Ridley's case.

32. Kirsh could not explain why additional fees were assessed against Ridley's account, but insisted that Ridley was one month delinquent as of January 2016.

33. Kirsh had no knowledge of M & T Bank's procedures regarding treatment of mortgage loans once a customer exited chapter 13 bankruptcy.

34. Kirsh did not know what the charges labeled "Recoverable Corporate Advance" specifically represented, nor did he know why they were charged to Ridley.

35. According to Kirsh, the additional fees listed on the monthly mortgage statements were not required to paid "technically till the end of the mortgage."

36. Kirsh stated that charging Foreclosure Attorney Fees appeared to indicate that M & T Bank had hired a foreclosure attorney for Ridley's account. However, he would not confirm that this occurred without further research into M & T Bank records.

37. Kirsh stated that M & T Bank records did not reflect any complaints from Ridley regarding the additional fees assessed against his account. These records indicated that Ridley only questioned why the statements showed him past due and ended with Ridley hanging up on representatives.

38. In response to Ridley's inquiries regarding past due amounts, M & T Bank requested that Ridley assist it in investigating his account by sending in proof of his payments to M & T.

39. Kirsh stated that M & T Bank conducted an investigation of Ridley's account which corroborated the mortgage statements' reporting of his account as one month past due.

40. Kirsh believed this investigation to be accurate because Ridley never proved otherwise, in spite of M & T Bank asking for his assistance.

41. Kirsh believed that within three weeks of trial, Ridley's account had been corrected, was deemed current, and that all previously assessed fees had been removed.

42. M & T Bank's second witness, Samantha Thomas, was assigned to review Ridley's loan one week prior to trial.

43. To prepare for her testimony, Thomas reviewed Ridley's note, mortgage, payment history, and correspondence. She also spoke with Bayview's bankruptcy department regarding the loan to clarify issues involved.

44. Thomas testified that Ridley made three timely payments which were received and credited to his mortgage account for November and December of 2015 and January of 2016. Based upon her review of Ridley's account, he was not delinquent.

45. An audit of Ridley's account was conducted at an unspecified time after this adversary was commenced. The audit revealed that Ridley's loan was current and the additional fees charged to him were to be removed.

46. Thomas surmised that Foreclosure Attorney Fees and Bankruptcy Fees were mischaracterized. They were actually litigation fees incurred by M & T Bank in this adversary case and were deemed to be recoverable from Ridley. They were reclassified as unrecoverable and were removed from Ridley's account.

47. Despite charging Ridley for "Foreclosure Attorney Fees" for at least three months, a foreclosure action has not been filed.

48. As of trial, according to both Thomas and Kirsh, M & T Bank has removed all fees from Ridley's account and his loan has been deemed current.

## Conclusions of Law

Ridley alleges that M & T Bank violated the automatic stay by failing to properly credit payments received during his bankruptcy and assessing additional fees. He also alleges the Bank violated the discharge injunction and 524(i) by continuing to show him in default on his home mortgage, and attempting to collect late fees and other charges after completing his chapter 13 plan and being declared current on his mortgage. He asks this Court to use its civil contempt powers under §105(a) to sanction M & T Bank and award him damages for its actions. M & T Bank defends against these charges by arguing that any errors in its records were inadvertent. It acknowledges that it did send statements showing Ridley's account past due and in default, and

added fees based upon the delinquency, but those fees were not actually due to be paid until the note reached the end of its term. It has now corrected its records to reflect that Ridley is current, it has waived and removed the additional fees, and Ridley suffered no harm from its actions.

Bankruptcy affords debtors protection from creditors' attempts to collect debt. The automatic stay provides protection from the time a case is filed until entry of discharge or dismissal of the case. 11 U.S.C. § 362(c)(2). Once discharge is entered, the automatic stay dissolves and the discharge injunction arises to prevent creditors from attempting to collect debts that were discharged. Section 524(a)(2) of the Bankruptcy Code provides that a discharge:

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ….

The discharge injunction prevents virtually all actions by a creditor to collect personally from a debtor, including legal proceedings, letters, phone calls, threats of criminal proceedings or similar actions. *See* Norton Bankruptcy Law & Practice 3d, § 58:2 (2016). In a chapter 13 case where a plan is confirmed, long-term debts such as mortgages are usually not paid off during the plan and therefore are not discharged upon completion of the plan. However, if a creditor fails to properly credit payments made under a confirmed plan, § 524(i) treats such conduct as a violation of the discharge injunction even if the underlying debt is not discharged. It provides:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming a plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

To remedy a violation of § 524(i), debtors appeal to the contempt powers of the court under § 105(a). *See Paul v. Iglehart (In re Paul),* 534 F.3d 1303 (10th Cir. 2008).

**A. Violation of the Automatic Stay.**

To establish a claim under § 362(k), a debtor must establish by a preponderance of the evidence that a violation occurred, that the violation was committed willfully, and that the violation caused actual damages. A "willful" violation occurs if the creditor knew of the stay and intended the actions that constituted the violation. No specific intent to violate the stay is required. *In re Johnson*, 501 F.3d 1163 (10th Cir. 2007); *In re Kline*, 472 B.R. 98 (B.A.P. 10th Cir. 2012). Although it is a close question, the Court does not find that Ridley met his burden of proving a violation of the automatic stay. Prior to entry of the order of discharge on December 11, 2015, there was little information about the treatment or reporting of Ridley's account. M & T Bank indicated on November 5, 2015 that Ridley was current. No evidence was presented regarding any communication from M & T Bank to Ridley prior to December 11, 2015 that indicated he was in default and that it was improperly attempting to collect debts in violation of the automatic stay. The first communication to Ridley and attempt to collect debts not owed was not made until February 1, 2016. The mortgage statement dated that day was the first notice to Ridley that he was in default and that additional fees had been assessed against his account. Ridley stated that he received phone calls every other week notifying him that he was in default but he did not indicate that these began before discharge was entered. Although it is likely that a misapplication of payments and attempt to collect fees improperly assessed occurred before entry of discharge on December 11, 2015, the evidence was insufficient to reflect that any attempts to collect were made in violation of the automatic stay.

**B. Violation of the Discharge Injunction.**

This case represents one of the classic situations that led to the adoption of § 524(i): a chapter 13 debtor makes all the required payments on long-term debt required through the life of

his confirmed plan, receives a discharge, and is then told that his mortgage is in default, he owes additional charges, and is threatened with foreclosure. Often, this is the same scenario that drove him to bankruptcy in the first place. Section 524(i) presents a remedy for such cases. There are two requirements to establish a violation of this section: 1) a willful failure to credit payments received under a confirmed plan and 2) material injury to the debtor.

As in § 362(k), the first requirement of willfulness is simply an intent to commit the act; it does not require a specific intent to violate the Code or plan provisions. It only requires a showing that the creditor intended to credit payments improperly. "Absent a creditor's proof that the improper crediting was a mistake in conflict with the creditor's normal procedures, the creditor should be presumed to have intended its acts." 4 Collier on Bankruptcy ¶524.08 (16th ed.)(hereinafter "Collier"). Bad faith is not required. *Paul* at 1308(citations omitted).

M & T Bank cites *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)* 421 B.R. 356 (Bankr. S.D. Tex. 2009) for its argument that there is no discharge injunction violation because there is no discharge of a home mortgage. That case does not address 524(i) since it involved a case filed prior to 2005. *See Pompa v. Wells Fargo Home Mortgage, Inc. (In re Pompa),* 2012 WL 2571156, *7 (Bankr. S.D. Tex. June 29, 2012). Further, Bankruptcy Judge Isgur actually denied summary judgment to the mortgage company where there was no indication that debtor was past due or owed additional fees at the time he completed his plan and received a discharge. Once discharge was entered, the mortgage creditor sent notices of default, acceleration of debt and foreclosure sale. The bankruptcy court held that these actions may have violated the confirmed plan and order of the court. The court also observed that other issues were at stake, noting that Rule 2016—and the fresh start—were thwarted when mortgagees wait until after bankruptcy to collect fees and expenses that are not disclosed while chapter 13 cases

are pending. *Rodriguez.* at 380. And, the court contemplated that even though a threatened foreclosure did not occur, other damages from mortgagees' actions may exist. *Id.* at 381.

Several years later, Judge Isgur expressly rejected M & T Bank's argument that because Ridley's mortgage was a long-term debt that was not discharged, the discharge injunction does not apply, nor can it be found to have violated the bankruptcy code or held in contempt under § 105. *Pompa,* 2012 WL 2571156, at *8. Finding that § 524(i) applies to any willful failure to credit payments received under a chapter 13 plan regardless of whether the debt was discharged, that court observed "if § 524(i) applied only to discharged debts, the provision would be superfluous; a failure to credit plan payments on discharged debts would violate the discharge injunction regardless of whether § 524(i) were enacted." *Id.* at *8. Instead, § 524(i) is meant to enforce plan provisions and ensure "that the completion of the plan will actually result in a fresh start for the debtor." *Id. See also Scott v. Caliber Home Loans, Inc. (In re Scott),* 2015 Bankr. LEXIS 2472 (Bankr. N.D. Okla. 2015); *Mattox v. Wells Fargo, NA (In re Mattox),* 2011 WL:3626762, (Bankr. E.D. Ky. Aug. 17, 2011)(§ 524(i) provides "a clear remedy" to debtors for misapplication of mortgage payments once a discharge injunction is entered.)

M &T Bank admitted that it issued mortgage statements reflecting that Ridley was one month behind in his payments and that his account had incurred various fees. However, it self-assesses these actions as "inadvertent error," which should excuse it from responsibility for its intentional acts done without malice. The Court believes that such actions are exactly the type of conduct § 524(i) addresses. In the span of just a few days, M & T Bank went from declaring to this Court that Ridley was current and had made all payments due during his plan to declaring that he was in default, relying on its records to support both positions. It offered no explanation as to why it pursued Ridley for default and late fees. Wouldn't its admission that Ridley was

current be based upon an examination of its records?  How, then, could it represent that he was one month behind and that it just inadvertently failed to correct its records?  Such actions were not inadvertent error.  Rather, it appears that M & T Bank willfully misapplied his payments and disregarded the bankruptcy process so that Ridley would not be brought current in its records. Sending erroneous mortgage statements seems designed to harass and intimidate Ridley into making a payment he did not owe.  And it continued to pursue him even after he contacted it and asked for an explanation.  Such actions were not inadvertent.

M & T Bank offers another justification for its behavior:  Ridley himself, his own inaction and unreasonableness, and failure to specifically identify each fee that was incorrectly charged.  It was Ridley's fault because he failed to provide proof that he didn't owe the additional charges.  It was Ridley's fault for hanging up on M & T Bank representatives instead of reasonably providing proof of the checks M & T Bank had cashed.  It was Ridley's fault for only complaining about being shown as delinquent and not objecting to the Foreclosure Attorney Fees and Recoverable Corporate Advances.  How ironic that M & T Bank was frustrated by Ridley's failure to adequately explain the status of his mortgage account.  M & T Bank, which relied upon its own records to justify its claim that Ridley's loan was in default, is responsible for its software and computer system, its procedures, the accuracy of data entry, and the accuracy and performance of its personnel.  Ridley did what he was supposed to do:  make timely and complete payments pursuant to the terms of his note and mortgage.  M & T Bank did not do what it was supposed to do:  accurately and completely credit his account for those payments.

The requirement of willfulness is met here since the evidence is that M & T Bank employees followed procedures in crediting Ridley's payments in such a way as to show him in default.  It continued to send statements reflecting default for nearly 18 months after the plan was

completed and the order declaring his account current. M & T Bank provided no evidence or explanation of what procedures are in place to prevent this problem and whether those were followed, or that this case was an anomaly. The Court presumes that it intended its actions of showing this account in default for such a lengthy period of time. Even after this lawsuit was filed, it took M & T Bank many months to audit Ridley's account and correct its records. Its representatives testified that the account status was not corrected and deemed current until the eve of trial. There was no evidence to support M & T Bank's claim that any errors were inadvertent.

The Court also finds that the second requirement of material injury to debtor was met. M & T Bank's failure to improperly credit payments to Ridley's account resulted in an additional monthly payment charge, default fees, assessment of other fees, including attorney fees for foreclosure, and unexplainable "Corporate Recovery Advance" fees. M & T Bank's representative stated that these fees were to be tacked on to Ridley's mortgage and recovered at the end of his mortgage. Again, the Court finds Collier's analysis persuasive:

> [T]he material injury requirement will be met in virtually every case involving a secured creditor, because the failure to properly credit payments will almost always result in a higher payoff balance for the debtor and therefore a larger lien on the debtor's property than if the payments were credited properly. A creditor that has collected the payments made by the debtor under the plan and credited them in a manner leading to a higher balance remaining on a debt has caused a material injury to the debtor. A common example of such injury is the assessment of postpetition charges to the debtor that are not in accordance with the terms of the confirmed plan. Obviously, if a creditor could subvert the terms of a plan simply by adding such charges, the cure of a default under the plan would be meaningless.

Collier ¶ 524.08. Ridley was required to bring this action to effect the proper application of payments to his account. He incurred legal costs and attorney fees. Certainly M & T Bank caused him to suffer material injury. The Court concludes that Ridley has clearly proven that M

& T Bank violated the discharge injunction of § 524(a)(2) by willfully failing to credit payments received under Ridley's chapter 13 plan and causing material injury to Ridley.

## C. Sanction and Damages

Bankruptcy courts have the power to sanction a creditor for violation of the discharge injunction under their civil contempt powers of § 105(a). *Paul,* 534 F.3d at 1306-07. A party seeking an order of contempt must show by clear and convincing evidence that the creditor (1) had actual or constructive knowledge of the discharged debt and (2) intended the actions which were taken in violation of the injunction. *See In re Zilog,* 450 F.3d 996, 1007 (9th Cir. 2006); *Otero v. Green Tree Servicing, LLC (In re Otero)*, 498 B.R. 313 (Bankr. D. N.M. 2013). Where a willful violation of the discharge injunction occurs, courts have generally awarded actual damages, attorney fees, and punitive damages as a sanction for the violation. *See In re Culley,* 347 B.R. 115 (B.A.P. 10th Cir. 2006) (unpublished). *See also* Collier at ¶ 524.02.

Here, the record and stipulations clearly establish that M & T Bank had actual knowledge of the discharge injunction and Notice that Ridley was current on his mortgage upon completion of his chapter 13 plan. The Court has also found that its actions were willful. The evidence is clear and convincing that M & T Bank should be found in contempt. The Court finds that an award of actual damages for attorney fees and costs is appropriate. Ridley was required to hire legal counsel to take some action that would get M & T Bank's attention. An award of attorney fees and costs is an appropriate sanction. The amount of the award of attorney fees and costs shall be determined after Ridley's counsel files an updated, verified application for attorney fees and costs. M & T Bank may file a response to the application if it desires.

In addition to an award of attorney fees and costs, Ridley is entitled to recover actual damages for lost wages. He was required to devote time to consult with his attorneys and attend

court-related hearings and meetings.  He stated that he lost $ 155.00 in wages each day he attended trial.  Ridley met with his attorney on several different occasions and was present for one day of trial.  Thus the Court awards actual damages of $ 310.00 for two days of lost wages.

Punitive damages are an appropriate sanction when the discharge injunction is violated. *See In re Kabiling*, 551 B.R. 440 (B.A.P. 9th Cir. 2016); *In re Nibbelink*, 403 B.R. 113 (Bankr. M.D. Fla. 2009).  The Court is mindful that its powers to order such damages should be exercised with restraint and only under limited circumstances.  However, where a creditor knew of a debtor's federally protected right and acted intentionally or with reckless disregard of that right, an award of punitive damages may be justified.  *See Diviney v. Nationsbank of Tx. (In re Diviney)*, 225 B.R. 762 (B.A.P. 10th Cir. 1998).  Courts may also consider (1) the creditor's conduct, (2) the creditor's ability to pay damages; (3) the creditor's level of sophistication; (4) the creditor's motives; and (5) any provocation by the debtor.  *Id.* at 777.

The Court believes that an award of punitive damages is justified in this case.  The nature of M & T Bank's conduct in this case is egregious and offensive to this Court.  The Court is appalled that M & T Bank offered only two witnesses, each with very little preparation time and no personal experience with this account.  They possessed only minimal amounts of information regarding Bank procedures.  Kirsh was not aware that his employer had stipulated that Ridley was current when he exited bankruptcy and that he made the three payments due from the time he exited bankruptcy until his file was sent to Kirsh's department.  M & T Bank refused to investigate Ridley's complaints, forcing him to file a lawsuit to get its attention.  It continued this conduct after this case was filed by failing to audit his account or correct his records until trial neared.  Although its attorneys stipulated for purposes of this case that Ridley had not defaulted, as Kirsh reviewed M & T Bank's records he found that they continued to reflect that Ridley was

in default. M & T Bank placed the burden for correcting its errors on Ridley himself. Such conduct supports a need for punitive damages.

The Court has no doubt that M & T Bank has the ability to pay an award of punitive damages. It is a highly sophisticated lender. Its public website indicates that it has numerous branches, offers banking services for commercial loans, consumer loans, mortgages, and offers investment services. Its trial representatives indicated that it utilizes a sophisticated servicing platform and has the expertise and resources to be familiar with the bankruptcy process and Rules, especially the chapter 13 process, as well as its duties to comply with this Court's orders.

As for M & T Bank's motives, this Court can only conclude from its conduct in this case that it ignores chapter 13 in an effort to collect as much as it can from mortgage clients. M & T Bank did not take seriously this adversary case. It exhibited little regard for the rights of its mortgage clients, and offered no information regarding its procedures for transferring a successful chapter 13 client into current status. It did not wish to have its procedures and treatment of Ridley exposed to the light of this Court's inquiry. The fact that M & T Bank's actions did not result in financial harm to Ridley is because of Ridley and his attorney's actions, not because of M & T Bank. It appears that M & T Bank's procedures are designed to thwart the chapter 13 process of allowing debtors to cure arrearages, and exit bankruptcy current on their mortgages.

The Court rejects M & T Bank's suggestion that Ridley bears some responsibility for the default showing and erroneous charges. He did nothing to cause the problem here and did his best to follow bankruptcy laws and procedures. He also attempted to correct the problems without taking additional legal action. M & T Bank's "blame the victim" defense is not well-received and reinforces the Court's finding that punitive damages are necessary.

In awarding punitive damages as a sanction, the Court's intent is to award no more than is reasonably necessary to gain the attention of M & T Bank, with the goal that it will implement procedures to prevent this treatment of other clients. *See BMW of N. Am., Inc. v. Gore,* 517 U.S. 559 (1996). The Court believes that an appropriate sanction should be computed based upon the number of months M & T Bank erroneously reported false information regarding Ridley's account and attempted to collect amounts that were not owed. According to Kirsh, Ridley's mortgage was assigned to M & T Bank's mortgage default department in January of 2016. The mortgage was reported as in default for all of 2016, even after Ridley filed this adversary case in May. Kirsh also testified and assured this Court that the account was corrected in January of 2017. For twelve months Ridley's loan was reported as delinquent and M & T Bank sent statements and made phone calls attempting to obtain payment for an additional monthly payment and various fees that he did not owe. Being mindful that M & T Bank is a sophisticated commercial lender with considerable assets, the Court believes that a sanction of $ 1,000 for each month it failed to reflect the correct status of Ridley's account post-discharge is necessary and appropriate. Accordingly, it awards punitive damages in the amount of $ 12,000.00.

The Court is aware that the ratio of actual damages based on lost wages alone to punitive damages may be viewed as disproportionate. However, the Court notes that attorney fees requested through trial totaled $ 40,450.00 with costs of $ 644.02. Even if not all attorney fees requested are awarded, the Court believes it is likely that once those fees are determined, the actual damages will exceed punitive damages. *Culley* at *6. The Court also believes that without this punitive damages sanction, large lenders and servicers such as M & T Bank will continue

> placing debtors in a defenseless position by hiding behind its faceless, opaque bureaucracy and ignoring the orders of the bankruptcy court. The Court will not

countenance that conduct when it is proven, no matter how small the damages may be, because a confirmation order and the injunction of § 524(a)(2) as made applicable here by § 524(i) should supply valuable protection from just this sort of conduct, especially when the offending creditor neither regrets nor explains its actions.

*In re Houlik*, 2011 WL 4459099 *7 (Bankr. D. Kan. Sept. 25, 2011)(*rev'd on other grounds* 481 B.R. 661 (B.A.P. 10th Cir. 2012)).

To ensure that M & T Bank has properly adjusted the status of Ridley's note and mortgage and removed all fees and charges discussed herein, the Court declares Ridley current on his account, and orders M & T Bank to correct its books and records to reflect that as of February 16, 2017, he was current and not in default. The Court also orders M & T Bank to remove from Ridley's account all charges and fees based upon its showing of default, including the late charges, Foreclosure Attorney Fees, Recoverable Corporate Advance fees, and Insurance Inspection Fees. It shall make no attempt to collect such fees from Ridley.

## Conclusion

M & T Bank knew of Ridley's bankruptcy, completion of plan, curing of default, and discharge. Yet, it continued to report him in default, added unexplained charges, sent numerous statements and made phone calls to Ridley notifying him that his mortgage was in default. Therefore, the Court finds Defendant M & T Bank in civil contempt for violation of the discharge injunction of 11 U.S.C. § 524. The Court also finds Defendant M & T Bank liable to Plaintiff Ridley for actual damages for lost wages in the amount of $ 620.00, as well as costs and attorney fees in an amount to be determined, and punitive damages of $ 12,000.00.

The Court grants M & T Bank's Motion to Strike Exhibit A from Plaintiff's Proposed Findings of Fact and Conclusions of Law.

The Court will enter a separate order directing M & T Bank to correct its records, and setting deadlines for Ridley's counsel to file a verified application for attorney fees and costs and for M & T Bank to file a response if it objects to reasonableness of the fees requested.

A separate judgment in favor of Plaintiff Ridley shall be entered after the amount of attorney fees and expenses is determined.

###