**Dated: July 21, 2017**

**The following is ORDERED:**



*Tom R. Cornish*
TOM R. CORNISH
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: | |
| CHARLES D. RIDLEY, | CASE NO. 11-81817-TRC |
| | CHAPTER 13 |
| Debtor. | |
| CHARLES D. RIDLEY, | |
| Plaintiff | |
| v. | ADV. NO. 16-8008-TRC |
| M & T BANK, | |
| Defendant. | |

### ORDER REGARDING ATTORNEY FEES AND COSTS

Before the Court for consideration is the Plaintiff's Application for Allowance of Attorney's Fees (Docket Entry 77), Defendant M & T Bank's Response (Docket Entry 78), and Plaintiff's Reply (Docket Entry 79.)

After trial held February 16, 2017, this Court determined that Defendant M & T Bank had violated the discharge injunction under 11 U.S.C. § 524(i) and awarded actual and punitive damages to Plaintiff Ridley, including attorney fees and costs. Entry of judgment was deferred pending a determination of the amount of attorney fees and costs that should be awarded to Ridley.

Ridley seeks attorney fees of $ 41,255.00 and expenses of $ 644.02 for services rendered from March 11, 2016 through filing of this Application. Two attorneys represented Ridley during the application period: Greggory Colpitts and Lauren Colpitts. M & T Bank requests that the Court enter an award not greater than $ 11,000. Its basis for seeking a substantial reduction in attorney fees requested is three-fold: 1) the current fee application appears to include charges not previously included in an earlier fee statement attached to Ridley's Proposed Findings and fact and Conclusions of Law, and retroactively increased some time billed; 2) tasks performed by Lauren Colpitts were duplicative and unnecessary, and her hourly rate is too high; and 3) the success achieved in light of settlement discussions does not warrant the fees requested.

I.    Analysis.

This Court awarded attorney fees in this case as part of the actual damages suffered by Ridley due to M & T Bank's actions in violation of the discharge injunction. Attorney fees were incurred to present the contempt issue to the court and to enforce the discharge injunction. Ridley was required to bring this litigation to force M & T Bank to correct its records to reflect that Ridley's home mortgage account was current upon successful completion of his Chapter 13 plan. Ridley's action was also needed to force M & T Bank to remove false and unsubstantiated fees from his account and stop any foreclosure processes that the Bank was charging him to undertake. These actions were violations of the discharge injunction under § 524(i). Ridley was successful in his lawsuit. He may recover reasonable costs, even if the primary damages are the attorney fees

and expenses incurred to bring an action to enforce the discharge injunction. *Eastman v. Baker Recovery Servs. (In re Eastman),* 2010 WL 5462469 (Bankr. W.D. Tex. Dec. 29, 2010). Attorney fees are part of the actual damages suffered as a result of a violation of the discharge injunction. *Id.*

Trial courts are afforded wide discretion to determine the amount of attorney fees to be awarded based upon the facts of each case, having presided over the entirety of the case and observed the conduct of the parties and attorneys throughout.[1] Bankruptcy courts evaluate the reasonableness of an attorney fee application under the adjusted lodestar approach set forth in 11 U.S.C. § 330, as well as twelve guidelines articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "*Johnson* guidelines").[2] The *Johnson* guidelines are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

The primary considerations in an award of fees are the hourly rate charged and hours expended. Indeed, most of the *Johnson* guidelines are "subsumed within the calculation of hours reasonably expended at a reasonable hourly rate."[3] The fee application submitted includes detailed

---

[1] *See Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1201 (10th Cir. 1986). *See also Peyrano v. Sotelo (In re Peyrano),* 2017 WL 2731299 *7(10th Cir. BAP June 26, 2017)(unpublished)(in determining the amount of an award of attorney fees, a bankruptcy court "has far better means of knowing what is just and reasonable than an appellate court.")(citations omitted).

[2] *In re Market Center East Retail Property, Inc.* 730 F.3d 1239 (10th Cir. 2013). Although 11 U.S.C. § 330 is technically not applicable to this matter, the factors identified are well-accepted guidelines for awarding professional fees.

[3] *Hensley v. Eckerhart,* 461 U.S. 424, 434 n.9 (1983).

time records regarding the services performed in this case. The Court will evaluate the reasonableness of those fees based upon the detailed entries provided.

    A.        Differences in time entries.

The Court agrees with M & T Bank that any time entries through March 3, 2017 that were added or increased in the fee application submitted June 5, 2017 should be disallowed. Ridley's counsel gives no explanation as to why the amounts were added. The Court believes that the time entries submitted as of March 3, 2017 are likely the most accurate and contemporaneous.[4] Therefore, it will disallow the additional fees requested and limit fees to the time entries listed in the March 3 invoice. For Greg Colpitts, time entries will be limited as follows:

```
6/30/2016:     .45 hours Meeting with Charles Ridley to discuss status and review
                        documents provided…
02/14/2017:   1.50 hours Exhibit review & trial preparation
02/16/2017:   2.00 hours Trial
02/16/2017:   0.00 hours Prepare Transcript request*[5]
02/23/2017:    .75 hours Research & review findings of fact and conclusions of law
02/23/2017:   0.00 hours Review Trial Transcript*
03/03/2017:   0.00 hours Review findings of fact filed by defendant*
```

For Lauren Colpitts, time entries will be limited as follows:

```
12/13/2016:   0.00 hours Pre-Trial Conference*
02/16/2017:   0.00 hours Trial*
02/22/2017:   1.60 hours Review Trial Transcript
03/01/2017:   1.20 hours Research punitive damages
03/02/2017:   1.40 hours Continue researching awards for punitive damages 10th Circuit
```

    B.        Hourly rates and dual time entries.

This Court has extensive experience with attorney fee applications and knowledge of customary rates charged by attorneys who practice in this Court, as well as in the bankruptcy courts

---

[4] The Court notes that the March 3 invoice did not include time for Lauren Colpitts to attend the pre-trial conference or the trial. The Court observed Ms. Colpitts in attendance at both matters but because those hours were not originally billed the Court will disallow them.

[5] Entries marked by an asterisk did not appear in the March 3 Invoice.

in the Northern and Western Districts of Oklahoma.  No challenge has been made to the hourly rate charged by Greggory Colpitts.   Mr. Colpitts regularly practices bankruptcy law before this Court, and has done so for a number of years.  He has extensive experience in bankruptcy law and procedures, and is well-respected by his colleagues and this Court.  The Court finds that Colpitts' charge of $ 300 an hour is  reasonable and customary for this jurisdiction for an attorney with his extensive experience in consumer bankruptcy law and litigation, board certification in consumer bankruptcy, L.L.M. degree in taxation, and his experience in prosecuting discharge injunction violation cases.

M & T Bank challenges the fee charged by Lauren Colpitts as too high for an attorney with less than one year of experience.  Ms. Colpitts charges $200 an hour; M & T Bank asserts that a rate of $ 125 an hour is reasonable.  An annual fee study compiled by Robert Glass, Esq. of the Tulsa office of the GableGotwals law firm reflects established 2017 hourly rates based upon a survey of thirteen different Tulsa firms.  This survey is of hourly rates in litigation matters as well as bankruptcy court engagements.  The average reported rate for attorneys with 0 to 3 years' experience ranges from $ 125 an hour to $ 245 an hour.  The majority of firms reporting charge $ 175 an hour or more.  The Court has reviewed the qualifications, time entries and pleadings of Lauren Colpitts.  The Court finds that her work is of excellent quality, and her time entries appear quite reasonable for the tasks performed.  Although the Court finds Lauren Colpitts' work to be of high quality and of value to Ridley's case, it agrees that a fee of $ 200 an hour for an attorney with less than one year of experience exceeds the customary rate for this District.  The Court finds that her qualifications of graduating with honors, and law review experience justify charging more than the minimum reflected in the Tulsa area fee survey of $ 125.  Based upon the quality of work

performed and qualifications, the Court finds that a fee of $ 150 an hour is reasonable for Lauren Colpitts.

The Court finds virtually no duplication of services by either of Ridley's attorneys. As noted by our circuit court, "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Anchondo v. Anderson, Crenshaw & Assoc., L.L.C.,* 616 F.3d 1098, 1105 (10th Cir. 2010) (quoting *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1302 (11th Cir. 1988)). Assigning preliminary work and drafting to Lauren Colpitts at a lower hourly rate allowed Greg Colpitts to spend less time and charge a lower fee than if Greg Colpitts performed all research, drafting and editing required to pursue this case. The Court finds no unreasonable or unnecessary duplication of efforts by Greg Colpitts and Lauren Colpitts, but notes that it did not approve time billed by Lauren Colpitts to attend the pre-trial conference or the trial, both of which M & T Bank argues as duplicative. The Court finds that the hours spent on the pre-trial memorandum, the pre-trial order, and Proposed Findings of Fact and Conclusions of Law to be reasonable.

C.     Reduction based upon results achieved.

M & T Bank argues that the Court should reduce the fee award because Ridley's attorneys did not achieve as good a result by taking the case to trial as was offered in settlement negotiations before trial. M & T Bank argues that evidence of settlement negotiations bears on the factor of results obtained. However, it is just one of the considerations in arriving at an award of attorney fees. *See Lohman v. Duryea Borough,* 574 F.3d 163 (3rd Cir. 2009).

Both parties have cited an email exchange regarding settlement which is attached by M & T Bank to its Response in opposition to Ridley's request for attorney fees. Based upon their

submission and description of the discussions, it appears that no formal settlement offer from M & T Bank, i.e., one that included a dollar amount, was made until the evening of February 13, 2017, just two and a half days before trial. The offer was to pay $ 27,500 for "attorney fees and damages." It stated that Ridley's account had been corrected to remove all additional fees and charges, and reflected his status as current. However, Ridley maintains that despite the verbal assurances of its counsel and its account representative, M & T Bank statements did not reflect a correction until nearly two months after this trial, in the April 2017 statement. Thus, it is difficult for the Court to know precisely when his account was corrected.

Further, an offer of $ 27,500 to settle the case and compensate Ridley for his attorney fees and damages on the eve of trial was not "significantly more favorable" to Ridley than what this Court ultimately awarded. Ridley's attorney fees were $ 21,470 through February 8, 2017 which did not include final trial preparations or actual trial time. The Court's order was clear that M & T Bank must pay actual damages including attorney fees as well as punitive damages. This award was greater than what M & T Bank offered. It is undisputed that Ridley was the prevailing party in this case. He prevailed on his cause of violating the discharge injunction, requested and was granted actual damages, was awarded one of the largest amounts of punitive damages this Court has ever ordered. Such results indicate greater success than what was offered by M & T Bank on the eve of trial.

The Court also disagrees with M & T Bank's characterization that Ridley's counsel was not interested in settlement, and M & T Bank's suggestion that the case "would have been long ago resolved, but for Ridley's counsel [*sic*] unreasonable and escalating demands and his desire to make a windfall on this case." The parties reference three different attempts to settle. M & T Bank's records reflect that Greg Colpitts initiated at least two of those attempts. Mr. Colpitts

sought a continuance of the pre-trial conference in November of 2016 for the express purpose of conducting settlement discussions. At the pre-trial conference in December of 2016, M & T Bank's then-counsel, Matt Hudspeth, admitted to this Court that he was having great difficulty in finding a representative of his client with settlement authority. This indicates to the Court that the party who was not interested in settlement was M & T Bank, not the Debtor and his counsel. Having attempted settlement twice before the week of trial, and M & T Bank failing to assist its own counsel in those attempts, Ridley and his counsel had no choice but to continue to prepare for trial. By M & T Bank's counsel's own admission, it was M & T Bank who prevented settlement of the case by failing to provide a representative who could participate in settlement discussions. Thus, the Court finds no cause to reduce the amount of fees awarded to Ridley based upon the settlement negotiations.

Finally, the Court finds no cause to reduce the amount of fees awarded due to the novelty or difficulty of the issues presented. M & T Bank erroneously conflates "classic" with "simple." The Court deemed this case as "classic" because it is representative of the common struggle of chapter 13 debtors with their mortgage servicers who refuse to acknowledge the chapter 13 process. While Ridley's experience may be similar to those of many other chapter 13 debtors, this does not mean his case was simple and justifies a reduction in fees. Each of these cases is unique and fact-intensive. It appears that M & T Bank was represented by seven different attorneys in several different law firms throughout this case. This belies M & T's assertion that this was a simple case requiring minimal amounts of attorney time. The mortgage statements and charges were confusing and required Ridley's counsel to expend time to review them. It is unclear from the mortgage statements that Ridley's account was corrected prior to trial, and M & T Bank did

not communicate to Ridley's counsel that a correction was made until shortly before trial in February of 2017. The Court finds no cause to reduce fees based upon this factor.

II.     Conclusion.

The Court finds that the time spent and services rendered were reasonable, necessary and beneficial to Ridley's case. The time entries indicate that Ridley's counsel was efficient in prosecuting his case and in trial preparation, and did not incur unnecessary time. The Court finds that the results obtained support its finding that the fees requested with the exception of the few this Court has disallowed are reasonable. Ridley prevailed in proving that M & T Bank violated the discharge injunction and in obtaining an award of punitive damages. The Court clarifies that it awarded two days of lost wages totaling $ 310.00 in actual damages to Charles Ridley. The Court reduces Greg Colpitts' hours by 8.75 hours and approves 100.10 hours[6] of attorney fees in the amount of $30,030.00. The court reduces Lauren Colpitts' hours by 7.55 hours and approves 35.30 hours of attorney fees at the rate of $ 150 an hour for a total of $ 5,295.00. The Court also approves costs totaling $ 644.02.

IT IS THEREFORE ORDERED that Plaintiff Charles Ridley is awarded actual damages consisting of $ 310.00 for lost wages, $ 35,325.00 in attorney fees, and expenses of $ 644.02, and punitive damages of $ 12,000 as previously awarded, for a total award of $ 48,279.02.

IT IS FURTHER ORDERED that a separate judgment in favor of Plaintiff Charles Ridley shall be entered contemporaneously herewith.

###

---

[6] The fee application includes an entry of .40 hours by Greg Colpitts on 5/13/16 to prepare a certificate of service of summons but this is designated as "NO CHARGE" therefore the Court has deducted .40 hours from the total hours upon which fees are awarded.